**SO ORDERED.**

**SIGNED this 9th day of August, 2016.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Cox Motor Express of | ) | Case No. 14-10468 |
| Greensboro, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| James C. Lanik | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-02023 |
| | ) | |
| James W. Smith, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

### MEMORANDUM OPINION GRANTING SUMMARY JUDGMENT IN PART

THIS CASE came before the Court for hearing on May 17, 2016, on the Motion for Summary Judgment [Doc. #32] filed by James C. Lanik (the "Plaintiff" or "Trustee"), as Chapter 7 Trustee for Cox Motor Express of Greensdboro, Inc. ("Debtor"). James C. Lanik and Andrew D. Irby appeared for the Plaintiff. Norman B. Smith appeared for James W. Smith, Jr. (the

1

"Defendant"). Plaintiff filed a Brief in Support of Trustee's Motion for Summary Judgment [Doc. #32-1] (the "Plaintiff's Brief"). For the reasons stated herein, Plaintiff's Motion for Summary Judgment is granted in part and denied in part.

## I.   <u>PROCEDURAL BACKGROUND</u>

Plaintiff moves the Court to grant summary judgment and determine as a matter of law that the Trustee is entitled to recover $97,600.00 as preferential transfers, pursuant to 11 U.S.C. §§ 547 and 550(a). Plaintiff has conceded that the Defendant has a partial "new value" defense, under 11 U.S.C. § 547(c)(4), and the $97,600.00 is the net avoidable preference amount after taking into account any offsetting "new value" payments that were made.

On April 4, 2016, Defendant filed his Brief/Memorandum of Law in Opposition to Plaintiff's Motion for Summary Judgment [Doc. #34] (the "Defendant's Brief"). Defendant argues that the amount of contested factual issues in this case preclude the entry of summary judgment under Fed. R. Civ. P. 56. In particular, Defendant states that the Plaintiff has not met his burden in proving that Cox Motor Express of Greensboro, Inc. (the "Debtor"), was insolvent at the time the alleged preferential transfers were made, as required by 11 U.S.C. § 547(b)(3). Defendant further asserts the affirmative defenses "Ordinary Course of Business," under 11 U.S.C. § 547(c)(2), and

"New Value," under 11 U.S.C. § 547(c)(4), and contends that these defenses are issues for trial.  Filed contemporaneously with the Defendant's Brief was an Affidavit of James W. Smith Jr. [Doc. #33] (the "Defendant's Affidavit"), which includes facts (and legal conclusions) in support of Defendant's arguments.

In an attempt to establish insolvency for purposes of summary judgment, the Plaintiff has relied upon the Debtor's tax returns and the presumption of insolvency during the 90 days pre-petition under 11 U.S.C. § 547(f).  The Defendant has attempted to rebut the presumption of insolvency during the 90 days pre-petition by arguing that the Debtor's schedules reflect that the Debtor was solvent on the petition date and by submitting his own affidavit as a former principal of the Debtor.

On April 18, 2016, Plaintiff filed Trustee's Reply Brief in Response to Defendant's Memorandum of Law [Doc. #37] (the "Plaintiff's Reply to Defendant's Brief").  In this brief, Plaintiff argues that any new facts asserted by the Defendant in the Defendant's Brief or Defendant's Affidavit should be stricken pursuant to Fed. R. Civ. P. 37(c)(1), made applicable to this adversary proceeding under Fed. R. Bankr. P. 9037.  In particular, Plaintiff argues that the facts asserted in regard to the solvency of the Debtor are not competent evidence because

they were not disclosed in response to the Trustee's specific
discovery requests for such facts, and the content of the
affidavit contradicts the content of the Schedules from the
Debtor's Petition to which the Defendant swore as Debtor's
principal.

The Defendant also contests insolvency during the extended
preference period for insiders under 11 U.S.C. § 547(b)(4)(B).
Plaintiff contends that the Debtor's tax returns establish
insolvency during the insider preference period.  In the
alternative, the Plaintiff contends that he is entitled to
summary judgment for preference payments made during that 90
days, minus any "new value" from the Defendant, which results in
a net avoidable preference amount of $63,200.00.

Defendant argues that the Motion to Exclude Evidence should
be denied, see Brief/Memorandum in Opposition to Plaintiff's
Motion to Exclude Evidence [Doc. #41] (the "Defendant's Reply to
Motion to Exclude Evidence"), and has filed a further Notice of
Correction to Defendant's Affidavit [Doc. #38] in which
Defendant states that there were "typographical errors" in the
Defendant's Affidavit and in responses to requests for
admission, interrogatories, and requests for production of
documents.[1]

---

[1] The Notice of Correction states: "In reviewing defendant's affidavit and his
further response to plaintiff's first requests for admissions, further
answers to plaintiff's first set of interrogatories, and further responses to

## II.  **FACTUAL BACKGROUND**

The Debtor filed a voluntary petition under chapter 7 of
the United States Bankruptcy Code on April 30, 2014 (the
"Petition Date"), Bankr. Case No. 14-10468 (the "Main Case").
The Plaintiff-Trustee initiated this adversary proceeding on May
22, 2015.  Plaintiff seeks to avoid a number of alleged
preferential transfers made to the Defendant within the one year
prior to the Petition Date pursuant to 11 U.S.C. § 547, and to
recover those funds for the benefit of the estate pursuant to 11
U.S.C. § 550(a).

The Debtor, Cox Motor Express of Greensboro, Inc., is a
trucking company.  James W. Smith Jr., the Defendant, was the
President of the Debtor on the Petition Date and executed the
Debtor's bankruptcy petition under penalty of perjury in his
capacity as President.  For the past 15 years, Defendant has
also been the general manager of the Debtor and responsible for
all of its day-to-day activities.  See Defendant's Affidavit, ¶

plaintiff's first request for production of documents, defendant and his
counsel have discovered that typographical errors were contained in paragraph
no. 9 of the affidavit and in paragraph no. 3 of the further responses, etc.
The document to which defendant was attempting to make reference is attached
hereto as Exhibit 1.  The reference in paragraph no. 9 of the affidavit
should have been to pages 19 through 22 of Document 32-4, rather than to
pages 28 and 29; and the reference in paragraph no. 3 of the other document
should have been to pages 1 through 4 of Exhibit 1, rather than to pages 9
and 10."  The Court notes, as Plaintiff points out in his Reply to this
Notice of Correction [Doc. #39], that Defendant concedes all but one of the
transfers made by the Defendant to the Debtor during the year preceding the
Petition Date. That contested transfer is the March 12, 2015, transfer in the
amount of $50,000.  The Defendant has also claimed there are two loans made
by the Defendant to the Debtor, on October 30, 2013, and December 18, 2013,
which were not included in the information provided.

2.  Defendant is married to Pamela C. Smith, an officer and shareholder of the Debtor.  See Motion for Summary Judgment, Exhibit B, Requests for Admission 6 and 7, p. 4 [Doc. #32-4]. Defendant has been married to Pamela Smith at all relevant times to this adversary proceeding.  Id.

The first loan made from the Defendant to the Debtor occurred on March 18, 2011, and was in the amount of $10,000. Defendant's Affidavit, p. 4.  This was followed by one more loan prior to the beginning of the Preference period, which occurred on July 15, 2011, and was in the amount of $1,200.  Id.  There is no evidence of the Debtor repaying any of these loans prior to the start of the Preference Period.  During the Preference Period, the Defendant made additional loans to the Debtor, and the Debtor began making repayments to the Defendant.  The history of loans and repayments during the Preference Period is summarized in the following table:

| Date | Loan from Defendant to Debtor | Repayment from Debtor to Defendant |
|---|---|---|
| 05/01/2013 | $ 40,000.00 | |
| 10/30/2013 | $ 40,000.00 | |
| 10/30/2013 | $ 8,000.00 *** Disputed | $ 2,400.00 |
| 11/01/2013 | | $ 1,200.00 |
| 11/04/2013 | | $ 1,200.00 |
| 11/05/2013 | | $ 1,200.00 |
| 11/06/2013 | | $ 1,200.00 |
| 11/07/2013 | | $ 1,200.00 |

| | | |
|---|---|---|
| 11/08/2013 | | $ 1,200.00 |
| 11/11/2013 | | $ 1,200.00 |
| 11/12/2013 | | $ 1,200.00 |
| 11/13/2013 | | $ 1,200.00 |
| 11/14/2013 | | $ 1,200.00 |
| 11/15/2013 | | $ 1,200.00 |
| 11/18/2013 | | $ 1,200.00 |
| 11/19/2013 | | $ 1,200.00 |
| 11/20/2013 | | $ 1,200.00 |
| 11/21/2013 | | $ 1,200.00 |
| 11/22/2013 | | $ 1,200.00 |
| 11/25/2013 | | $ 2,400.00 |
| 12/02/2013 | | $ 6,000.00 |
| 12/04/2013 | | $ 2,400.00 |
| 12/05/2013 | | $ 1,200.00 |
| 12/06/2013 | | $ 1,200.00 |
| 12/09/2013 | | $ 1,200.00 |
| 12/10/2013 | | $ 1,200.00 |
| 12/11/2013 | | $ 1,200.00 |
| 12/12/2013 | | $ 1,200.00 |
| 12/13/2013 | | $ 1,200.00 |
| 12/16/2013 | | $ 1,200.00 |
| 12/17/2013 | | $ 1,200.00 |
| 12/18/2013 | $ 40,000.00 | |
| 12/18/2013 | $ 8,000.00 *** Disputed | |
| 12/19/2013 | | $ 4,800.00 |
| 01/01/2014 | | $ 1,200.00 |
| 01/02/2014 | | $ 1,200.00 |
| 01/03/2014 | | $ 1,200.00 |

| | | |
|---|---|---|
| 01/04/2014 | | $ 1,200.00 |
| 01/06/2014 | | $ 1,200.00 |
| 01/07/2014 | | $ 1,200.00 |
| 01/08/2014 | | $ 1,200.00 |
| 01/09/2014 | | $ 1,200.00 |
| 01/10/2014 | | $ 1,200.00 |
| 01/13/2014 | | $ 1,200.00 |
| 01/14/2014 | | $ 1,200.00 |
| 01/15/2014 | | $ 1,200.00 |
| 01/16/2014 | | $ 1,200.00 |
| 01/17/2014 | | $ 1,200.00 |
| 01/20/2014 | | $ 1,200.00 |
| 01/21/2014 | | $ 1,200.00 |
| 01/22/2014 | | $ 1,200.00 |
| 01/23/2014 | | $ 1,200.00 |
| 01/24/2014 | | $ 1,200.00 |
| 01/27/2014 | | $ 1,200.00 |
| 01/28/2014 | | $ 1,200.00 |
| 01/29/2014 | | $ 1,200.00 |
| 01/30/2014 | | $ 1,200.00 |
| 02/11/2014 | | $ 2,400.00 |
| 03/12/2014 | | $ 50,000.00 *** Disputed |
| 03/13/2014 | $ 19,000.00 | |
| 03/18/2014 | $ 5,000.00 | |
| 03/24/2014 | $ 15,000.00 | |
| 03/26/2014 | | $ 15,000.00 |
| 03/28/2014 | | $ 12,000.00 |
| 04/04/2014 | | $ 4,800.00 |
| 04/08/2014 | | $ 16,800.00 |

The table above was created by the Plaintiff based upon information provided by the Defendant in response to discovery requests (the "Transfer Table").[2]    Defendant disputes the repayment from the Debtor to Defendant on March 12, 2014, in the amount of $50,000.00.    Defendant's Affidavit, p. 4, ¶ 8. Although the Transfer table included in the Debtor's petition and schedules includes reference to this $50,000.00 payment, the schedules reflect that the payment was made to the Defendant by another creditor (the "Marquette Transfer").    The nature and circumstances of the Marquette Transfer are disputed, and the record is insufficient to establish the circumstances of that transfer for purposes of summary judgment.    The Defendant also avers that he made two additional loans to the Debtor which the Plaintiff has not included in the summary: a loan of $8,000.00 on May 1, 2013, and a loan of $8,000.00 on December 18, 2013. According to the Plaintiff, he did not include these additional loans because the Defendant failed to provide documentation of them.    Plaintiff concedes that, to the extent the Defendant can prove the existence of either of these loans, he does not oppose

---

[2] This Transfer Table can be found in Exhibit A to the Plaintiff's Affidavit, Doc. #32-3, pp. 15-16.    This table also was included in the Debtor's bankruptcy schedules in response to Question 3(c) of the Statement of Financial Affairs, disclosing payments to insiders.    See Main Case, Doc. #9, pp. 73-74.    The Statement of Financial Affairs was signed by Defendant on behalf of the Debtor.

either being classified as "new value" and reducing the preference claim by that amount.[3]

The Defendant made a series of loans to the Debtor by check. See Transfer Table (including check numbers for each loan). The first loan, on September 18, 2011, has a description that it is "Earnest Money given to Eric P Handler, PC for purchase of Lexington, NC property." Id. The second loan, on July 15, 2011, has a description that it is "Cash given to Everett B Saslow Jr a lawsuit concerning NE Cox/ Cox Motor Exp." Id. The third loan, on May 1, 2013, provides a description that it is "w/ agreement to interest @ 200.00 per $1000.00 / same that Marquette would charge." The loans on October 30, 2013, and December 18, 2013, are described as having the same agreement as the third loan. The last three loans made on March 13, 18, and 24, 2014, provide no description. The terms of these loans were not memorialized in a note or other financial instrument. The only agreement made on any of these loans was that the Debtor would pay $200.00 of interest for every $1,000.00 loaned, but provides no other terms. See id.

The repayments from the Debtor to the Defendant similarly were made by check. See Transfer Table. These repayments began

---

[3] Only the putative loan on December 18, 2013 appears to be material to the issues before the Court because the existence of the May 1, 2013 loan would have no effect on the calculation of the Defendant's "new value" defense under 11 U.S.C. § 547(c)(4).

on October 30, 2013 (within the Preference Period), and were made almost daily between the dates of October 30, 2013, and January 30, 2014, with some minor exceptions. Id. The payments typically were for $1,200.00, with $1,000.00 going toward principal and $200.00 going toward interest. Id. In March, 2014, the regularity of repayment ceased, and the payment amounts dramatically increased. See id.

### III. STANDARD OF REVIEW

Summary judgment is appropriate when the matters presented to the Court "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056; Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). In considering a motion for summary judgment, the Court must construe the "facts and inferences drawn therefrom in the light most favorable to the nonmoving party." Seabulk Offshore, Ltd. v. American Home Assur. Co., 377 F.3d 179, 183 (4th Cir. 2001). The party moving for summary judgment has the initial burden of proving the absence of a genuine issue of material fact based on the pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits. Celotex, 477 U.S. at 323. Once this initial burden has been met, the nonmoving party must then set forth specific facts sufficient to raise a genuine

issue for trial. <u>Matsushita Elect. Indus. Co., Ltd. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586-87 (1986).

The Court also may consider any evidence in the record or submitted by the parties if it would be possible to introduce the evidence at trial. <u>See</u> Fed. R. Civ. P. 56(c)(2) ("A party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible into evidence."); <u>see also</u> <u>Celotex</u>, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). What matters is not that the parties submit evidence in support or opposition to the motion in an admissible form but that the "substance or content of the evidence . . . be admissible . . . ." 11 James Wm. Moore et al., <u>Moore's Federal Practice</u> ¶ 56.91[2] (3d ed. 2014).

## IV.  <u>DISCUSSION</u>

### A.    **Preference Action - § 547(b)**

Under 11 U.S.C. § 547(b), the trustee may avoid any transfer of an interest in property –

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –

12

(A) on or within 90 days before the date of the filing of the petition; or

(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b).[4]

Under Section 547(g), the Trustee bears the burden of proving the avoidability of these transfers under Section 547(b). In this case, the Trustee has provided sufficient evidence to establish: (1) the transfers by the Debtor (not including the Marquette Transfer) listed in the Transfer Table were transfers of an interest of the Debtor; (2) the Defendant was a "creditor" of the Debtor; (3) the Defendant is an insider of the Debtor; (4) the transfers occurred during the preference period; and (5) the Defendant received more than he would have received in a chapter 7 liquidation.

A transfer by check from the debtor's bank account "is prima facie evidence that the transfers are transfers of

---

[4] The time period under 11 U.S.C. §547(b)(4) shall be referred to herein as the "Preference Period."

interests of the debtor in property." <u>In re Hardwood P-G, Inc.</u>, No. 06-50057-LMC, 2007 WL 1728653, at *2 (Bankr. W.D. Tex. June 12, 2007). The transfers in this case were made by check from the Debtor's bank account to the Defendant. <u>See</u> Transfer Table. Therefore, these transfers have been established to be transfers of an interest of the Debtor.

The Defendant was indisputably a creditor. The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). The Defendant does not dispute that he made loans to the Debtor. <u>See</u> Transfer Table; <u>see also</u> Motion for Summary Judgment, Exhibit B, Answer to Interrogatory #6, p.9 (describing the transfers as loans). The obligation to repay these loans falls under the definition of a "claim", and therefore the Defendant is a creditor of the Debtor as the holder of a claim against it.

The Trustee further has established that the Defendant was an insider of the Debtor. The Bankruptcy Code defines an "insider" of a corporation as, among other things, a "relative

of a general partner, director, officer, or person in control of the debtor." 11 U.S.C. § 101(31)(B)(vi). A current spouse qualifies as a relative. <u>See</u> <u>In re Paschall</u>, 408 B.R. 79, 86 (E.D. Va. 2009), <u>aff'd</u> <u>sub</u> <u>nom.</u> <u>Prunty v. Terry</u>, 388 F. App'x 299 (4th Cir. 2010). Pamela C. Smith, the Defendant's spouse during the entire Preference Period, is an officer of the Debtor. <u>See</u> Motion for Summary Judgment, Exhibit B, Requests for Admission 6 and 7, p.4 [Doc. #32-4]. Therefore, the Defendant is an insider of the Debtor. Since the Defendant is an insider, the Preference Period extends to one year prior to the Petition Date. All transfers at issue occurred during the Preference Period as required by 11 U.S.C. § 547(b)(4). <u>See</u> Transfer Table.

Finally, in order to show that an unsecured, non-priority creditor would receive less in a chapter 7 liquidation, the Trustee must show that the distribution to this class of creditors would be less than 100%. <u>In re Caremerica, Inc.</u>, 409 B.R. 737, 753-54 (Bankr. E.D.N.C. 2009). The proof of claim filed by the Defendant against the Debtor shows that his claim is both unsecured and non-priority. <u>See</u> Case No. 14-10468, Claim #14. The Trustee also has asserted in his affidavit that the payout to unsecured, non-priority creditors will be less than 100%. Trustee's Affidavit, ¶ 16. The Defendant has not produced any evidence in opposition on this point. Therefore,

the Plaintiff-Trustee has met his burden with respect to 11 U.S.C. § 547(b)(5).

The Defendant contends that the Plaintiff has not established the Debtor's insolvency at the time of the transfers as required by 11 U.S.C. 547(b)(3) for purposes of summary judgment. As discussed below, the Court agrees. Therefore, the Court will enter partial summary judgment in favor of the Plaintiff-Trustee on all elements of 11 U.S.C. § 547(b), except for § 547(b)(3) with respect to the transfers reflected in the Transfer Table other than the Marquette Transfer. The Court also will enter summary judgment against the Defendant with respect to his defense of ordinary course of business. The remaining issues for trial will be the insolvency of the Debtor at the time of the transfers, the nature and circumstances of the Marquette Transfer, and the new value defense.

**1.   11 U.S.C. § 547(b)(3) - Insolvency of Debtor**

The Trustee must establish that the Debtor was insolvent at the time the transfers were made. 11 U.S.C. § 547(b)(3); see also In re Strickland, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999) ("Evidence of insolvency on the date of the alleged preference is the critical issue and proof of insolvency on any other date is insufficient."). The Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation

16

. . . ." 11 U.S.C. § 101(32)(A). Courts in the Fourth Circuit use the "balance sheet" test for determining insolvency. See In re Heilig-Meyers Co., 328 B.R. 471, 477 (E.D. Va. 2005). Under the "balance sheet" test, the debtor is insolvent when the sum of all the debtor's liabilities is greater than the sum of all its assets,[5] at a fair valuation, at the time of the transfer. See In re Roszkowski, 494 B.R. 671, 677 (Bankr. E.D.N.C. 2013); In re Johnson, 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006); In re Bruno Mach. Corp., 435 B.R. 819, 838 (Bankr. N.D.N.Y. 2010).

In determining balance sheet insolvency, the Court first must consider whether "fair valuation" contemplates the fair market value of the assets after proper marketing, or liquidation value.  "The conclusion that a debtor is a going concern or on its deathbed dictates whether to value the debtor's assets based on their liquidation value or the value they would fetch if sold over a reasonable period of time; the assumption being that a going concern could wait for a better offer and presumably a higher price." In re Heilig-Meyers Co., 328 B.R. at 477.  "'Fair value, in the context of a going concern, is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within

---

[5] This calculation of the debtor's assets does not include "the value of any property fraudulently conveyed by the debtor" or "the fair market value of any property that may be exempted from the property of the estate." In re Johnson, 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006).

a reasonable period of time to pay the debtor's debts.'" <u>Id.</u> at 477-78 (quoting <u>Lawson v. Ford Motor Co. (In re Roblin Indus.)</u>, 78 F.3d 30, 36 (2d Cir. 1996)).

In <u>Heilig-Meyers</u>, the court considered the debtor's operations on the petition date. <u>Id.</u> ("A debtor lies on its deathbed where the debtor is 'in a precarious financial condition' so that 'liquidation was imminent when the petition was filed.'" (quoting <u>In re Miller & Rhoads</u>, 146 B.R. 950, 955-56 (Bankr. E.D. Va. 1992)). "[A] business does not have to be thriving in order to receive a going concern valuation. Before the going concern valuation is to be abandoned, a business must be wholly inoperative, defunct, or dead on its feet." <u>In re Am. Classic Voyages Co.</u>, 367 B.R. 500, 508 (Bankr. D. Del. 2007), aff'd, 384 B.R. 62 (D. Del. 2008) (internal quotation marks and citations omitted).

As with all the <u>prima facie</u> elements of a preference claim under 11 U.S.C. § 547(b), the trustee has the burden of proving the debtor's insolvency at the time of the transfers. <u>See</u> 11 U.S.C. § 547(g). Nevertheless, "the debtor is presumed to have been insolvent on and during the 90 days immediately preceding the date of the filing of the petition." 11 U.S.C. § 547(f). "This presumption is a rebuttable one. A creditor may rebut the presumption by introducing some evidence that the debtor was not in fact insolvent at the time of the transfer. If the creditor

18

introduces such evidence, then the trustee must satisfy its burden of proof of insolvency by a preponderance of the evidence." <u>In re Roblin Indus., Inc.</u>, 78 F.3d 30, 34 (2d Cir. 1996). Furthermore, this presumption only applies during the 90 days prior to the petition date. Therefore, the trustee must prove the debtor's insolvency during the remainder of the insider preference period.

      **a.   Admissibility of Defendant's Affidavit**

The Defendant attempts to rebut the presumption of insolvency during the non-insider preference period by reference to the Debtor's schedules and by submitting his own affidavit in opposition to the Trustee's motion for summary judgment. As an initial matter, the Court must consider the admissibility of the Defendant's Affidavit. In Plaintiff's Reply Brief [Doc. #37], Plaintiff objects under Rule 37(c)(1) Fed. R. Civ. P. to the introduction of evidence contained in the Defendant's Affidavit and Defendant's Brief which was not previously disclosed during discovery despite the Trustee issuing specific discovery requests to which such information would have been responsive.

There can be no dispute that the previously undisclosed information was encompassed within the Trustee's discovery requests. In Interrogatory #8 to the Defendant, the Trustee asks: "Please describe your complete factual basis for denying the allegations contained in Paragraph 24 of the Trustee's

Complaint. Your response to this interrogatory should include, but not be limited to, identify any and all supporting documentation relating to such denial."[6]    Motion for Summary Judgment, Exhibit B, p. 10 [Doc. #32-4].    Defendant's entire response to Interrogatory #8 was: "The company in fact was not insolvent." Id.    Interrogatory #9 asks:    "Please describe your complete factual basis for denying the allegations contained in paragraph 31 of the trustee's complaint.    Your response to this interrogatory should include, but no be limited to, identifying any and all supporting documentation relating to such denial.[7]" Id.    Defendant's entire response to Interrogatory #9 was:  "The company in fact was not insolvent."    Id.

These answers to the Plaintiff's interrogatories are wholly inadequate and demonstrate a lack of good faith in fully responding to discovery.    The Trustee fairly requested information regarding the Defendant's categorical denials in the Defendant's answer to the complaint.    Rule 8(b)(1)(B) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding requires a party to admit or deny allegations asserted against it, and Rule 8(b)(5) requires that,

---

[6] Paragraph 24 of Plaintiff/Trustee's Complaint alleged: "Upon information and belief, the Transfers were made by the Debtor to the Defendant JAMES W. SMITH, JR. while the Debtor was insolvent."

[7] Paragraph 31 of Plaintiff/Trustee's Complaint alleged: "Upon information and belief, the Debtor was insolvent at all relevant times herein, including at the time of any such Transfers of money from the Debtor to the Defendant."

if a party denies an allegation based upon lack of information, the party must so state the basis of its denial. Bankruptcy Rule 9011, in turn provides that, by presenting a pleading to the court, the presenting party is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry and reasonable under the circumstances, . . . that the factual contentions have evidentiary support . . . ." Therefore, in order to deny the solvency of the Debtor, the Defendant either had to deny solvency based upon known facts and investigation, or deny upon lack of information, and if lack of information was the basis for the denial, the Defendant was required to so state. The answer contains merely an outright denial of insolvency. Therefore, such a denial must have been based on facts known to the Defendant and his counsel after reasonable inquiry, or the denial would have been a violation of Rule 9011. Those facts should have been disclosed in response to the Trustee's discovery requests.

Despite the Defendant's and his counsel's apparent failure to abide by the rules of discovery in this case, the Trustee did not prosecute a motion to compel the Defendant to respond to the solvency requests.[8]  Instead of seeking to compel responses, the

---

[8] On February 8, 2016, the Trustee filed his Motion to Compel Discovery Requests [Doc. # 28] (the "Motion to Compel"), requesting the Court to compel responses to discovery requests regarding the payment history between the parties.  After filing the Motion to Compel, the Defendant supplemented his responses, and the Trustee withdrew the motion.

Trustee seeks to exclude any portions of the Defendant's Affidavit which contain factual allegations tending to show that the Defendant was solvent.

The Trustee contends, and this Court agrees, that the Defendant was required to supplement his discovery responses prior to summary judgment with any additional factual information regarding solvency. Rule 26(e) requires a party to supplement any previous response to an interrogatory, request for production, or request for admission if the party learns that the previous disclosure is incomplete or incorrect in some material respect. See Fed. R. Civ. P. 26(e)(1). Rule 37 states that "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). If the Rule 26(e) information was not disclosed or supplemented in a timely manner, then the party will not be allowed to use that evidence unless the failure to disclose is shown to be "substantially justified or harmless." Id. "This rule prevents a party from using information in summary judgment motions not previously disclosed to opposing counsel." Haas v. Delaware and Hudson Railway Co., Inc., Case No. 1:04-CV-1503, 2007 WL 766324, at *2 (N.D.N.Y. March 8, 2007). "The intention

behind this preclusionary rule is to prevent the practice of 'sandbagging' an adversary with new evidence." Id.

The Defendant's responses to Interrogatories 8 and 9 fall under the purview of Rule 26(e) Fed. R. Civ. P., and so the Defendant was required to timely supplement those incomplete responses. The Defendant's answers were plainly incomplete which is made evident by the information provided in Defendant's Affidavit purporting to identify and value certain assets of the Debtor that were not previously disclosed on the Debtor's schedules.

A party's failure to supplement answers to interrogatories in a timely fashion can be grounds for exclusion of the undisclosed information. B-K Lighting, Inc. v. Vistion3 Lighting, 930 F.Supp.2d 1102, 1136 (C.D. Cal. 2013) (citing Woods v. DeAngelo Marine Exhaust, Inc., 692 F.3d 1272, 1280 (Fed. Cir. 2012)). "'Indeed, the district court has discretion, when circumstances warrant, to exclude evidence not produced in compliance with a proper discovery request.'" Id. (quoting Woods, and excluding affidavit offered at summary judgment where the affidavit purported to offer evidence that should have been disclosed in response to discovery requests or supplemented).[9]

---

[9] The Defendant's obligation to supplement is equally true with contention interrogatories such as the requests at issue in this case. As the circuit court recognized in Woods,

The failure to supplement in this case therefore is subject to sanctions under Rule 37 Fed. R. Civ. P., unless the Defendant demonstrates that the failure to supplement was substantially justified or harmless.

In determining whether the non-disclosure is substantially justified or harmless, the Fourth Circuit has rejected any bad faith requirement, and instead has delineated five factors the court should consider: "(1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence." <u>S. States Rack And Fixture, Inc. v. Sherwin-Williams Co.</u>, 318 F.3d 592, 597 (4th Cir. 2003).

Considering these factors, the Court finds that the solvency portions of the Defendant's affidavit should be excluded for purposes of summary judgment. The Court has considerable discretion in overseeing compliance with the Federal Rules of Civil Procedure. <u>Woods</u>, 692 F.3d at 1280. The

---

Contention interrogatories—like the interrogatory here—serve an important purpose in helping to discover facts supporting the theories of the parties. Answers to contention interrogatories also serve to narrow and sharpen the issues thereby confining discovery and simplifying trial preparation.

<u>Woods</u>, 692 F3d at 1280 (citing Fed. R. Civ. P. 33 advisory committee's note (1970 Amendment, Subdivision (b)). The Defendant's lack of good faith responses and/or the required supplementation runs entirely counter to these purposes and is sanctionable.

Trustee contends that he was surprised by the new asset information in the Affidavit and the record supports this contention. As discussed below, the information in the Affidavit actually contradicts the Debtor's schedules which were signed by the Defendant under penalty of perjury. Having completed discovery and submitted the case to the Court for summary judgment, the Trustee cannot now avoid any consequences caused by the Defendant's failure to disclose. The Fourth Circuit in Sherwin-Williams was considering whether to exclude evidence for purposes of trial, rather than at summary judgment. The Court finds that allowing the Affidavit for purposes of summary judgment would be entirely counter to the underlying goals of efficiency in the rules as discussed above, and would complicate, rather than streamline trial preparation as both discovery and summary judgment are intended to accomplish.

Finally, the Defendant's purported justification for his failure to answer the discovery requests fully and his failure to timely supplement his answers weighs heavily in the Court's decision to exclude the Affidavit. Defendant's sole defense to his failure to respond and supplement is that "it is and remains the plaintiff's burden to prove insolvency, before he can seek to establish any liability on the part of the defendant." Defendant's Brief in Response to Motion to Exclude Evidence, p.4 [Doc. #41]. Defendant argues that a company is either solvent

25

or insolvent, with the apparent point that his only option was
to respond either in the affirmative or negative.   <u>Id.</u>
Defendant goes on to state that he was "unable to comprehend how
he should go about answering the interrogatories in question in
more detail, since the only competent evidence before the court
[the Debtor's Schedules] showed solvency, not insolvency."   <u>Id.</u>
at 5.   Of course, the Defendant should have identified the
portions of the schedules upon which he relied to establish
solvency.   Furthermore, if the Debtor's Schedules show the
solvency of the Debtor with such clarity, it begs the question
of why the Defendant thought it necessary to submit an affidavit
further disputing the valuation he himself gave to the Debtor's
assets in the bankruptcy schedules with further information
personally known to him, but not reflected on the Debtor's
schedules.   These justifications wholly lack merit, and fully
miss the point of discovery, of which experienced counsel should
be well aware.   Therefore the Court will exclude the Affidavit
from its consideration at summary judgment.[10]

---

[10] Even if the Court had not excluded the Affidavit under Rule 37, the Court
would have disregarded the Affidavit for purposes of summary judgment because
it was directly contrary to the Defendant's previous sworn statements on the
Debtor's schedules.   As stated above, any portion of the affidavit that
contradicts the Debtor's Petition and Schedules, signed and sworn to as
accurate by the Defendant as president of the Debtor, cannot be used by the
Defendant to create an issue of material fact for purposes of summary
judgment.   As observed by the United States Supreme Court, the lower courts
"have held with virtual unanimity that a party cannot create a genuine issue
of fact sufficient to survive summary judgment simply by contradicting his or
her own previous sworn statement (by, say, filing a later affidavit that
flatly contradicts that party's earlier sworn deposition) without explaining

**b.   Sufficiency of Showing of Insolvency for Purposes of Summary Judgment**

Despite having excluded the Affidavit, the Defendant otherwise has presented evidence sufficient to rebut the presumption of insolvency during the 90 days prior to the petition date, and the Trustee has not established the Debtor's insolvency as a matter of law for purposes of summary judgment.

**(i).    The Presumption of Insolvency during the 90 Day Preference Period**

To rebut the presumption of insolvency under 11 U.S.C. §547(f), the Defendant must come forward some evidence showing that the Debtor was solvent.  Having disregarded the Defendant's

---

the contradiction or attempting to resolve the disparity." Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 806, 119 S. Ct. 1597, 1603, 143 L. Ed. 2d 966 (1999) (compiling cases).  The Fourth Circuit has similarly held that a party cannot raise a material issue of fact by contradicting a previously sworn statement.  See Barwick v. Celotex Corp., 736 F.2d 946, 960 (4th Cir. 1984) ("A genuine issue of material fact is not created where the only issue of fact is to determine which of the two conflicting versions of the plaintiff's testimony is correct."); Alba v. Merrill Lynch & Co., 198 F. App'x 288, 300 (4th Cir. 2006); Williams v. Genex Servs., LLC, 809 F.3d 103, 110 (4th Cir. 2015) (finding that a party may not avoid summary judgment by submitting contradictory evidence).

Defendant's Affidavit states that the balance sheets submitted by the Trustee purportedly do not contain at least $262,000.00 of net accounts receivables which had been factored to Marquette Financing that were assets of the Debtor.  Defendant's Affidavit, p.2.  Defendant claims that the Debtor owned 7 over-the-road tractors and 80 trailers that were free and clear of any liens with a total value of at least $672,000.00 as of the Petition Date. Id. at 3.  These amounts directly contradict Schedule B of the Debtor's Petition in this case executed by the Defendant.  On Schedule B, Line 16, for accounts receivable, the accounts receivable factored to Marquette Financing is valued at $187,761.17.  Case No. 14-10468, Debtor's Petition, Schedule B-16, p.5.  Schedule B also lists as assets the wholly owned tractors and wholly owned trailers of the Debtor and values them at $342,000.00.  Debtor's Petition, Schedule B-25 Attachment, p,12.

The Defendant has provided no reasonable explanation in the Defendant's Affidavit or Defendant's Brief for discrepancy between the values in the affidavit and the values attributed to these assets in the Debtor's schedules to which the Defendant attested under penalty of perjury.

Affidavit, the remaining evidence provided by the Defendant on the issue of solvency is the Debtor's bankruptcy schedules filed with the petition. These schedules show total assets of $2,089,014.75 and total liabilities of $1,925,882.54. Case No. 14-10468, Debtor's Bankruptcy Schedules [Doc. #9], Summary of Schedules, p.1. While the values assigned to assets by the Debtor in its schedules are not necessarily determinative of their fair value, In re Hoffinger Indus., Inc., 313 B.R. 812, 819 (Bankr. E.D. Ark. 2004), a reflection of solvency in the schedules can be sufficient to rebut the presumption of insolvency provided by 11 U.S.C. § 547(f). In re Affinity Health Care, Mgmt., Inc., 499 B.R. 246, 257 (Bankr. D. Conn. 2013) ("The presumption of insolvency may be rebutted if the debtor's schedules submitted in support of its bankruptcy petition indicate that assets exceed liabilities . . . .) (citing In re Roblin Industries, Inc., 78 F.3d at 34; Akers v. Koubourlis (In re Koubourlis), 869 F.2d 1319, 1322 (9th Cir.1989)). Based on a showing of solvency on the Debtor's bankruptcy schedules, the Defendant has sufficiently rebutted the presumption of insolvency during the 90-Day Preference Period. It is therefore the Trustee's burden at trial to prove the insolvency of the Debtor at the time of the transfers during the Preference Period.

**(ii).      Insolvency   of   the   Debtor   during   the Preference Period**

Because    the    Defendant    has    sufficiently    rebutted    the presumption of insolvency for the purposes of summary judgment, and because there is no presumption of insolvency during the portion of the Preference Period prior to 90 days pre-petition, it  is  the  Plaintiff's  burden  to  show  that  the  Debtor's liabilities exceeded its assets at the time of the transfers during the entire Preference Period.

The only evidence put forth by the Plaintiff on the issue of insolvency is the tax returns of the Debtor for the years preceding  the  Petition  Date.    Motion  for  Summary  Judgment, Exhibit  E  [Doc.  #32-7].    Although  these  returns  are  some evidence of insolvency and tend to show that the Debtor was in financial difficulty they do not conclusively establish either insolvency or that the Debtor was "wholly inoperative, defunct, or dead on its feet."  In re Am. Classic Voyages Co., 367 B.R. at  508.    Without  more,  the  record  offered  by  the  Trustee  is insufficient to establish that the Debtor was on its deathbed at the  time  of  the  transfers  for  purposes  of  summary  judgment. Therefore, for purposes of valuation of the Debtor's assets at summary judgment, the Court is unable to determine whether the Debtor was on its deathbed at the time of the transfers.  If it were  on  its  deathbed,  the  Court  will  consider  a  liquidation

value, rather than fair market value.  At this stage of the proceeding and making all inferences in favor of the non-moving party as the Court is required to do, but without prejudice to either party at trial presenting evidence of the proper valuation standard to be applied in this case, the Court is unable to determine whether the assets should be valued at liquidation value or market value.

Regardless of the valuation standard applied, the Plaintiff has failed to establish the Debtor's insolvency during the Preference Period for purposes of summary judgment.  "The determination of insolvency generally presents complex factual determinations that seldom lend themselves to disposition by summary judgment." In re KZK Livestock, Inc., 290 B.R. 622, 626 (Bankr. C.D. Ill. 2002).  As stated, the only evidence put forth by the Trustee on the issue of solvency is the Debtor's tax returns for the years preceding the Petition Date.  The tax returns provide only a "book value" for assets though and "book values are not ordinarily an accurate reflection of the market value of an asset." In re Roblin Indus., Inc., 78 F.3d 30, 36 (2d Cir. 1996) (citing United States Lines (S.A.), Inc. v. United States (In re McLean Indus., Inc.), 132 B.R. 247, 258 (Bankr.S.D.N.Y.1991); DeRosa v. Buildex Inc. (In re F & S Central Mfg. Corp.), 53 B.R. 842, 849 (Bankr.E.D.N.Y.1985)). Although balance sheets, even prepared under Generally Accepted

Accounting Principles ("GAAP") may be relevant, they are not determinative of a fair valuation of the debtor's assets and other evidence is often required. See In re Winstar Commc'ns, Inc., 348 B.R. 234, 274 (Bankr. D. Del. 2005), aff'd, No. 01 01063 KJC, 2007 WL 1232185 (D. Del. Apr. 26, 2007), aff'd in part, modified in part, 554 F.3d 382 (3d Cir. 2009); see also In re Flashcom, Inc., 503 B.R. 99, 122 (C.D. Cal. 2013), aff'd, No. 13-57161, 2016 WL 1238256 (9th Cir. Mar. 30, 2016) ("GAAP is not controlling in determining the fair market value of assets or the insolvency of the debtor . . . ."). Furthermore, unaudited tax returns in particular have been shown to be unreliable evidence of insolvency. See In re S. Indus. Banking Corp., 71 B.R. 351, 374 (Bankr. E.D. Tenn. 1987) (finding that tax returns do not provide a fair valuation of assets); but see In re Buffalo Auto Glass, 187 B.R. 451, 453 (Bankr. W.D.N.Y. 1995) (finding that the debtor's tax returns which showed negative retained earnings were sufficient to establish insolvency).

While insolvency and negative retained earnings on tax returns might be sufficient to show insolvency if unrebutted, in this case, the Defendant challenges this determination based on a showing of balance sheet solvency on the Debtor's bankruptcy schedules. Since there is no evidence that the schedules are erroneous, and the schedules have not been amended, the tax returns, using historical cost and accelerated depreciation

methods, are insufficient to establish insolvency for purposes
of summary judgment.    Therefore, the issue of the Debtor's
solvency during the entire Preference Period will be determined
at trial.

**B.    Ordinary Course of Business Defense- § 547(c)(2)**

Where the record is sufficient for the Court to rule on an
affirmative defense at summary judgment, it is appropriate for
the Court to do so.    FDIC v. Giamettai, 34 F.3d 51, 54-55 (2d
Cir. 1994) ("[I]n cases where there is an absence of evidence to
support an essential element of a defense, with respect to that
defense 'there can be 'no genuine issue as to any material fact'
since a complete failure of proof concerning an essential
element of the [defendant's affirmative defense] necessarily
renders all other facts immaterial;'" (quoting Celotex Corp. v.
Catrett, 477, U.S. 317, 323, 106 S.Ct. 2548, 2552 (1986)).    In
this case, Defendant attempts to rely upon the "ordinary course
of business defense" under Section 547(c)(2), which provides as
follows:

    (c)  The trustee may not avoid under this section a
         transfer –

        (2)  to the extent that such transfer was in
             payment of a debt incurred by the debtor in
             the ordinary course of business or financial
             affairs of the debtor and the transferee,
             and such transfer was –

            (A)  made in the ordinary course of business
                 or financial affairs of the debtor and
                 the transferee; or

> > (B)  made  according  to  ordinary  business
> > terms.

11 U.S.C. § 547(c)(2).

"The purpose of the ordinary course of business defense is to 'leave undisturbed normal financial relations, because it does not detract from the general policy of the section to discourage unusual action by either the debtor or its creditors during the debtor's slide into bankruptcy.'" In re Nat'l Gas Distributors, LLC, 346 B.R. 394, 404 (Bankr. E.D.N.C. 2006) (quoting Union Bank. v. Wolas, 502 U.S. 151, 160, 112 S.Ct. 527, 532, 116 L.Ed.2d 514 (1991); In re Jeffrey Bigelow Design Group, Inc., 956 F.2d 479, 487 (4th Cir.1992)). Under this test, the creditor-transferee must prove that the preferential transfer was "(1) in payment of a debt incurred by the debtor in the ordinary course of business or financial affairs of the debtor and the transferee; and (2) made in the ordinary course of business or financial affairs of the debtor and the transferee; or (3) made according to ordinary business terms." In re Clean Burn Fuels, LLC, No. 11-80562C-7D, 2014 WL 2987330, at *4 (Bankr. M.D.N.C. July 1, 2014).

## 1.  Debt Incurred in the Ordinary Course of Business

In considering whether a debt was incurred in the ordinary course of a debtor's business, a court must determine "whether or not the debt was incurred in a typical, arms-length

33

commercial transaction that occurred in the marketplace, or whether it was incurred as an insider arrangement with a closely-held entity." In re Valley Steel Corp., 182 B.R. 728, 735 (Bankr. W.D. Va. 1995).

In Pioneer Technology, Inc. v. Eastwood (In re Pioneer Technology, Inc.), 107 B.R. 698 (B.A.P. 9th Cir. 1988), the Ninth Circuit Bankruptcy Appellate Panel held that the debt incurred as a result of an insider shareholder's loan was not incurred in the ordinary course of business. In that case, the transferee, a significant stockholder of the debtor, made short-term loans to cure capitalization shortfalls of the debtor. Pioneer Technology, 107 B.R. at 702. The appellate panel held that these loans were not made in the ordinary course of the debtor's business. Id. ("We do not believe that a short term loan made by a debtor's shareholder in order to allow the debtor to maintain operations despite capitalization problems falls within the ordinary course of business exception to § 547."). There is no dispute that the loans in this case were made by the Defendant as an insider, and the Defendant concedes that these loans were made to the Debtor to capitalization and cash flow shortfalls of the Debtor. These types of loans are not considered debts incurred in the ordinary course of a debtor's business.

34

"[A] debt will be considered not incurred in the ordinary course of business if creation of the debt is atypical, fraudulent, or not consistent with an arms-length commercial transaction." In re Speco Corp., 218 B.R. 390, 398 (Bankr. S.D. Ohio 1998) (emphasis added); see also In re C.W. Min. Co., 500 B.R. 635, 643 (B.A.P. 10th Cir. 2013), aff'd, 798 F.3d 983 (10th Cir. 2015) (compiling cases).    Other courts similarly have rejected arguments that insider loans constitute debts incurred in a debtor's ordinary course of business.    The court in In re Agriprocessors, Inc., 521 B.R. 292, 313 (Bankr. N.D. Iowa 2014), held that a debt was not incurred in the ordinary course of the debtor's business when the debt was not made in an arm's-length commercial transaction, the defendant was not in the business of making loans and did not make loans to other entities, and the defendant did not require any promissory notes.

In this case, the undisputed facts establish that these debts were not incurred in the ordinary course of the Debtor's business.    This is not an arm's length transaction and does not carry any of the indicia of a normal financial transaction.    The Defendant is an insider and has been the general manager of the company for the past 15 years.    Defendant's Affidavit, ¶ 2.    The Defendant states that he advanced funds to the Debtor "as needs for injection of working capital into the company arose."    Id. at ¶ 10.    The Defendant is not in the business of making loans.

There was no promissory note and no agreed upon time when these debts would become due.  The payment history between the parties shows that payments were not required to be made on a fixed schedule and were often made daily.  Therefore, these debts were not incurred in the ordinary course of business and, as such, Defendant is unable to meet his burden under 11 U.S.C. § 547(c)(2).

For these reasons, the Court will grant the Trustee partial summary judgment, determining that the loans were not incurred in the Debtor's ordinary course of business.  Since the Court has determined the transfers to not have been incurred in the ordinary course of business, it is not necessary to consider whether the transfers were made in the ordinary course of business or according to ordinary business terms.

C.        New Value Defense - §547(c)(4)

The Plaintiff has conceded that Defendant has a partial defense under 11 U.S.C. § 547(c)(4) for any "new value" provided to the Debtor during the Preference Period.  The Court agrees that the majority of these loans made by the Defendant to the Debtor during the Preference Period constitute "new value" and act to reduce any previous balance owed by the Defendant as a preference.  The Court is unable to enter judgment on the specific amount or extent of this affirmative defense though due to the dispute over the solvency of the Debtor during the 90-day

36

Preference Period and the dispute over the existence of an alleged $50,000 payment made on March 14, 2014. Therefore, the Court will leave the issue of the extent of the "New Value" defense to be determined at trial.

## V.   CONCLUSION

The issues left for trial are: (1) whether the Debtor was insolvent under 11 U.S.C. § 547(b)(3) at the time of the transfers; (2) whether the repayment of $50,000.00 allegedly made to the Defendant on March 12, 2014, occurred and constituted a transfer of property of the debtor on account of an antecedent debt under 11 U.S.C. § 547(b)(2); (3) whether the two alleged loans made from the Defendant to the Debtor on May 1, 2013 and December 18, 2013, occurred and constitute new value; and (4) the extent of the Defendant's new value defense under 11 U.S.C. § 547(c)(4). Based on the foregoing, the Court will enter its ORDER contemporaneously herewith:

(1) GRANTING the Trustee's Motion to strike Defendant's Affidavit;

(2) GRANTING partial summary judgment with regard to the elements of 11 U.S.C. § 547(b)(1), (2), (4), and (5), with respect to all transfers reflected in the Transfer Table except the Marquette Transfer;

37

(3)  GRANTING  partial  summary  judgment  on  the  issue  of  11 U.S.C. §547(c)(2) finding that the Defendant is unable to establish the ordinary course of business defense;

(4)  DENYING  summary  judgment  with  regard  to  all  remaining issues as set forth above.

[End of Document]

## PARTIES IN INTEREST

**James C. Lanik**
Chapter 7 Trustee
P.O. Box 1550
High Point, NC 27261


**Andrew D. Irby**
Roberson Haworth & Reese, PLLC
P. O. Box 1550
High Point, NC 27261


**James W. Smith, Jr.**
4601 Schoolway Drive
Greensboro, NC 27406


**Norman B. Smith**
Smith, James, Rowlett & Cohen, LLP
Suite 310
101 S. Edgeworth St.
Greensboro, NC 27401


**William P. Miller**
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401