**SO ORDERED.**

**SIGNED this 4th day of November, 2016.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Cox Motor Express of | ) | Case No. 14-10468 |
| Greensboro, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |
| | ) | |
| James C. Lanik | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-02023 |
| | ) | |
| James W. Smith, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯ | ) | |

**<u>MEMORANDUM OPINION GRANTING PLAINTIFF'S MOTIONS IN LIMINE</u>**

This adversary proceeding came before the Court for hearing on October 18, 2016, on the motions <u>in limine</u> [Doc. #'s 64, 65] (collectively, "Motions in Limine") filed on September 19, 2016, by James C. Lanik ("Plaintiff" or "Trustee"), as chapter 7 trustee for Cox Motor Express of Greensboro, Inc. ("Debtor").

James W. Smith, Jr. ("Defendant") filed a Response to Plaintiff's Motions in Limine [Doc. # 68] ("Defendant's Response") on September 28, 2016. James C. Lanik appeared as chapter 7 trustee, Andrew D. Irby appeared as counsel for Plaintiff, and Norman B. Smith appeared as counsel for Defendant. This Memorandum Opinion shall constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052. For the reasons stated below, the Plaintiff's Motions in Limine will be granted as provided herein.

## Procedural Background

Debtor filed a chapter 7 bankruptcy petition [Bankr. Case No. 14-10468 ("Main Case"), Doc. #1] on April 30, 2014. On May 22, 2015, Plaintiff commenced this adversary proceeding by filing a Complaint seeking to recover allegedly preferential transfers [AP No. 15-02023 ("AP"), Doc. #1].[1]

During discovery, Plaintiff served on Defendant the Trustee's First Set of Requests for Admission, Interrogatories, and Requests for the Production of Documents [Doc. #32-3] ("Discovery Requests"). In Interrogatory No. 8 to Defendant, the Trustee requested: "Please describe your complete factual basis for denying the allegations contained in Paragraph 24 of the Trustee's Complaint. Your response to this interrogatory

---

[1] Citations to docket numbers refer to documents filed in the AP unless otherwise indicated.

should include, but not be limited to, identifying any and all supporting documentation relating to such denial."[2]   Motion for Summary Judgment, Exhibit B, p. 10 [Doc. #32-4].   Defendant's entire response to Interrogatory #8 was: "The company in fact was not insolvent."  Id.   Interrogatory #9 requested: "Please describe your complete factual basis for denying the allegations contained in paragraph 31 of the trustee's complaint.   Your response to this interrogatory should include, but not be limited to, identifying any and all supporting documentation relating to such denial."[3]  Id.  Defendant's entire response to Interrogatory #9 was: "The company in fact was not insolvent." Id.[4]

---

[2] Paragraph 24 of Plaintiff/Trustee's Complaint alleged: "Upon information and belief, the Transfers were made by the Debtor to the Defendant JAMES W. SMITH, JR. while the Debtor was insolvent."

[3] Paragraph 31 of Plaintiff/Trustee's Complaint alleged: "Upon information and belief, the Debtor was insolvent at all relevant times herein, including at the time of any such Transfers of money from the Debtor to the Defendant."

[4] The Trustee fairly requested information regarding Defendant's categorical denials in Defendant's answer to the complaint.   Rule 8(b)(1)(B) of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7008, requires a party to admit or deny allegations asserted against it.   Rule 8(b)(5) requires that, if a party denies an allegation based upon lack of information, the party must so state the basis of its denial.   Bankruptcy Rule 9011, in turn provides that, by presenting a pleading to the court, the presenting party is certifying that "to the best of the person's knowledge, information, and belief, formed after an inquiry and reasonable under the circumstances, . . . that the factual contentions have evidentiary support . . . ."  Therefore, in order to deny the solvency of Debtor, Defendant either had to deny solvency based upon known facts and investigation, or deny upon lack of information, and if lack of information was the basis for the denial, Defendant was required to so state.   The answer contains merely an outright denial of insolvency.   Therefore, such a denial must have been based on facts known to Defendant and his counsel after reasonable inquiry, or the denial would have been a violation of Rule 9011.   Those facts should have been disclosed in response to the Trustee's discovery requests.

On March 14, 2016, Plaintiff filed a Motion for Summary Judgment [Doc. # 32].   Defendant filed a Memorandum in Opposition to Summary Judgment [Doc. #34] on April 4, 2016. Defendant contemporaneously filed an Affidavit of James W. Smith Jr. [Doc. #33] ("Defendant's Affidavit") in support of his opposition.   Defendant's Affidavit stated that the balance sheets submitted by the Trustee in support of summary judgment purportedly did not contain at least $262,000.00 of net accounts receivable which had been factored to Marquette Financing that were assets of Debtor.   Defendant's Affidavit, p. 2.   Defendant asserted that Debtor owned 7 over-the-road tractors and 80 trailers that were free and clear of any liens with a total value of at least $672,000.00 as of the Petition Date.   Id. at 3.   These amounts directly contradict Schedule B to Debtor's petition, which was executed by Defendant as Debtor's president. On Schedule B, Line 16, for accounts receivable, the accounts receivable factored to Marquette Financing is valued at $187,761.17.   Case No. 14-10468, Debtor's Petition, Schedule B-16, p. 5.   Schedule B also lists as assets the wholly owned tractors and wholly owned trailers of Debtor and values them at $342,000.00.   Debtor's Petition, Schedule B-25 Attachment, p. 12.   The facts asserted in Defendant's Affidavit were not previously disclosed, and the Debtor's schedules have not been amended.

4

The Court issued its Memorandum Opinion Granting Summary Judgment in Part [Doc. #43] ("Summary Judgment Opinion"). In its opinion, the Court found, <u>inter</u> <u>alia</u>, that Defendant failed to respond in good faith to Plaintiff's discovery regarding solvency, failed to supplement his responses as required by Federal Rule of Civil Procedure 26(e), and that this failure was not substantially justified or harmless as contemplated by Rule 37(c)(1). <u>See</u> Summary Judgment Opinion, pp. 19-22. As a result, the Court struck Defendant's Affidavit for purposes of summary judgment. <u>Id.</u> The Court nevertheless denied summary judgment in favor of the Trustee on the issue of solvency, finding that the Trustee had failed to establish Debtor's insolvency during the insider preference period, and that Defendant had sufficiently rebutted the presumption of insolvency for purposes of summary judgment by reference to the bankruptcy schedules in this case. <u>Id.</u>, pp. 27-32.

There is no dispute in this case regarding certain transfers by Debtor and loans made to Debtor by Defendant, as those transactions are reflected in the table attached as an exhibit to paragraph 3(c) of Debtor's Statement of Financial Affairs (the "Transfer Table"). <u>See</u> Main Case, Doc. #9, pp. 73-74; and Summary Judgment Opinion, p. 9 n.2 (and accompanying text). The Court granted the Trustee's Motion for Summary Judgment in part with regard to the elements of 11 U.S.C. §

547(b)(1), (2), (4), and (5), with respect to all transfers reflected in the Transfer Table. See Summary Judgment Opinion, p. 37. In the Summary Judgment Opinion, the Court held that the remaining issues for trial are: (1) whether Debtor was insolvent under 11 U.S.C. § 547(b)(3) at the time of the transfers; (2) whether the repayment of $50,000.00 allegedly made to Defendant on March 12, 2014, occurred and constituted a transfer of property of Debtor on account of an antecedent debt under 11 U.S.C. § 547(b)(2); (3) whether the two alleged loans made from Defendant to Debtor on May 1, 2013 and December 18, 2013, occurred and constitute new value; and (4) the extent of Defendant's new value defense under 11 U.S.C. § 547(c)(4). Id.

After issuing the Summary Judgment Opinion, the Court entered its Order establishing the procedures to be followed for final pre-trial disclosures, motions in limine, and the presentation of exhibits at trial. [Doc. #45] (the "Final Scheduling Order"). The Final Scheduling Order required the parties to exchange final pre-trial disclosures on or before August 29, 2016, and set the trial of this matter for December 5, 2016. Plaintiff timely filed the Motions in Limine.

In his motions, Plaintiff moves the Court to: (i) exclude from trial any and all evidence, whether documentary or testimonial, offered by Defendant regarding, or in any way relating to, the solvency or insolvency of Debtor, the valuation

6

of Debtor's assets, or the amount of Debtor's liabilities to the extent any such evidence alters or supplements the assets, valuations, and/or liabilities in Debtor's schedules; (ii) determine the undisputed loans and loan repayments included in the Transfer Table are established facts for the purposes of trial; and (iii) exclude from the evidence that will be presented at trial any and all evidence offered by Defendant regarding the dates and amounts of loans provided by Defendant to Debtor, or repayments of such loans by Debtor to Defendant, to the extent such evidence conflicts with the contents of "Exhibit 1"[5] attached to Defendant's responses to Trustee's Discovery Requests. See Plaintiff's Motions in Limine [Doc. #'s 64, 65]. The Trustee contends that any valuation evidence that is inconsistent with the schedules should be excluded for trial under Rule 37 as it was at summary judgment. Finally, Plaintiff moves to exclude any valuation testimony offered by the Defendant as an expert under Rule 702 because the Defendant was not disclosed as an expert as required by the scheduling orders entered by the Court.

Defendant responded to the Motions in Limine [Doc. #68] ("Defendant's Response"), asserting that Plaintiff is in

---

[5] "Exhibit 1" is a balance sheet containing information regarding loans provided by Defendant to Debtor and the repayment of those loans by Debtor to Defendant. See Defendant's Responses to Plaintiff's first set of discovery requests [Doc. #32-4].

possession of Defendant's exhibits and has been since the filing of those exhibits with the Court for purposes of summary judgment in April. Defendant's Response, pp. 1-2. Since the Court has scheduled the trial for this proceeding to begin in early December, Defendant contends that Plaintiff is no longer surprised by the valuation information contained in the previously stricken affidavit.[6] At the hearing on October 18, 2016, Defendant further offered to re-open discovery to permit Plaintiff to take a deposition of Defendant and to hire a counter valuation expert. Defendant argues that the Court's exclusion of Defendant's Affidavit for purposes of summary judgment does not affect the admissibility of the same evidence at trial. Id., p. 4. Defendant insists that Plaintiff's failure to develop evidence of Debtor's solvency is the cause of any harm to Plaintiff's case on solvency, rather than any failure to disclose by Defendant. Id., p. 5.

Finally, Defendant "asks the court to become aware, and to take appropriate action with respect to an apparent misallocation of resources and excessive generation of administrative expenses in this case." Defendant's Response, p. 6. Defendant contends that he "has no property or funds whatever with which to satisfy a judgment that plaintiff might

---

[6] Counsel for Defendant stated at the hearing on the current motions that he does not intend to offer any valuation or solvency evidence at trial in addition to the information in Defendant's Affidavit.

obtain or pay any settlement that plaintiff should demand." <u>Id.</u>
"Instead of conserving wisely the net assets of this bankruptcy
case, plaintiff's counsel has moved ever onward with the
essentially worthless claim against defendant." <u>Id.</u>
Specifically, Defendant contends that the funds that will be
used to satisfy any allowed attorneys' fees incurred by the
Trustee in pursuit of this adversary proceeding should have been
used to satisfy Debtor's payroll tax obligation for which
Defendant and his wife may be personally liable. <u>Id.</u> at 7.

## **Discussion**

### **Expert Testimony**

Defendant did not timely identify any expert in this case,
and made clear at the hearing that he attempts to offer any
valuation testimony only as a lay witness under Rule 701.
Therefore, neither Defendant, nor any other witness testifying
on his behalf, will be permitted to testify at trial in the
capacity of an expert witness under Rule 702 because of
Defendant's failure to timely identify any expert witnesses
pursuant to Rule 26(a)(2). Fed. R. Civ. P. 26(a)(2). Depending
upon his establishing a proper foundation at trial, it is
possible that Defendant, as principal of Debtor, could be
permitted to testify as to Debtor's valuation at trial within
the capacity of a lay witness under Rule 701. <u>See</u> <u>U.S. v.</u>
<u>10,031.98 Acres of Land, More or Less, Situate in Las Animas</u>

9

<u>County, Colo.</u>, 850 F.2d 634, 639 n. 4 (10th Cir. 1988) (concluding an owner has a "right to testify as to the value of the property at issue even when the owner is a corporation and the valuation testimony comes from a designated corporate officer"). The issue of the admissibility of such testimony under Rule 701 is foundational and ordinarily would be left for trial. Nevertheless, in this case, the Court must determine whether to permit Defendant to offer further evidence of solvency and/or valuation when he failed to disclose such information as required by the rules of discovery.

**<u>Failure to Respond to Discovery</u>**

The purposes of discovery are: "(1) to narrow the issues [for trial]; (2) to obtain evidence for use at trial; and (3) to secure information as to the existence of evidence that may be used at trial." <u>Wood v. Todd Shipyards</u>, 45 F.R.D. 363, 364 (S.D. Tex. 1968). In the event a party fails to provide information or identify a witness as required, Rule 37, made applicable to bankruptcy proceedings by Federal Rule of Bankruptcy Procedure 7037, provides that the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial . . . ." Fed. R. Civ. P. 37(c)(1). The rule further authorizes courts to impose additional or alternative sanctions, including designating facts as established for the purposes of trial and prohibiting the

offending party from introducing designated matters into evidence. See Id. (authorizing courts to impose "appropriate sanctions," including those listed in subsections (b)(2)(A)(i)-(vi)); Fed. R. Bankr. P. 7037(a).

Courts have broad discretion to fashion appropriate sanctions for a violation of Rule 26. See In re Rood, 482 B.R. 132, 150 (D. Md. 2012), quoting 8B Charles Alan Wright, et al., Federal Practice & Procedure § 2289 (3d ed. 2010) ("Rule 37(b)(2) . . . gives the court a broad discretion to make whatever disposition is just in light of the facts of the particular case."); Silverberg v. Boyd Tunica, Inc., No. 2:09-CV-00119-WAP-DA, 2010 WL 6243327, at *2 (N.D. Miss. July 16, 2010) ("Rule 37 is flexible, and the court has broad discretion to use as many and varied sanctions as necessary to balance out prejudice to the parties."); In re Stark, 311 B.R. 750, 753 (Bankr. N.D. Ill. 2004) ("Bankruptcy Rule 7037 . . . provides various remedies for failure to make or cooperate in discovery, including an order prohibiting the non-responding party from introducing designated matters in evidence.").

Rule 37 specifically permits the exclusion of the undisclosed evidence where the nondisclosure of evidence was not "substantially justified" or "harmless." Fed. R. Civ. P. 37(c)(1). As this Court observed in the Summary Judgment Opinion, the United States Court of Appeals for the Fourth

11

Circuit uses a five factor test to determine whether the nondisclosure of evidence is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003).

Defendant focuses his arguments on the first factor, and argues that Plaintiff cannot be surprised with the valuation and solvency evidence for the December 5 trial because the Trustee will have known about the additional evidence since Defendant's Affidavit was filed at summary judgment in April.  In reply, Plaintiff contends that the Court's exclusion of the affidavit at summary judgment is binding at trial because Rule 37(c)(1) provides that, if a party fails to supplement discovery, he "is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at trial . . . ."  Fed. R. Civ. P. 37(c)(1).  Each party is incorrect in its analysis.

First, Rule 37 does not require the exclusion of evidence for all purposes solely because the Court excluded such evidence at a prior stage of the proceeding.  As set forth above, the Court is granted broad discretion in fashioning appropriate

relief for discovery abuses at various stages of an action. Rule 37 provides that the offending party will be prohibited from presenting such evidence on a motion, at a hearing, or at trial. Fed. R. Civ. P. 37(c) (emphasis added). Not only does the rule permit the Court to grant sanctions "in addition to or instead of this sanction . . . ," id., but also, if the drafters had intended that the same sanction apply throughout the proceedings, the rule could have so stated. The drafters could have mandated that "the party is not allowed to use that information or witness on a motion, at a hearing, and at trial . . . ." Instead, the drafters permitted the courts discretion and fashioned the remedy in the alternative. For example, litigation frequently involves early motion practice. It is conceivable that a court could exclude evidence as a sanction in connection with an early motion, but it might make little sense to exclude such evidence for the entirety of the proceedings if the violation occurs at the inception of discovery and any prejudice is curable during the discovery period without the more draconian sanction of exclusion for the entire proceedings. Therefore, the Court must consider whether to exclude the evidence for purposes of trial under the circumstances of this case.

Applying the factors from Southern States Rack at summary judgment, the Court determined that Defendant's conduct was not

substantially justified or harmless and warranted sanctions.
See Summary Judgment Opinion, pp. 19-22 (finding, inter alia,
that Defendant's discovery responses demonstrate a lack of good
faith, and were not substantially justified or harmless). In so
holding, the Court found that Defendant's explanation for his
failure to disclose was meritless and nothing has changed to
affect that conclusion. See Summary Judgment Opinion, pp. 25-
26. Therefore, the lack of merit in the Defendant's explanation
weighs in favor of finding that the failure to disclose was not
substantially justified or harmless.

The importance of the undisclosed valuation and solvency
evidence is central to this case, as indicated in the Summary
Judgment Opinion, and Defendant implicitly concedes the vital
importance of such evidence. See Defendant's Response, p. 5
("To be sure, the evidence has some importance, but is far less
important and less significant for the outcome of the trial,
than is plaintiff's complete failure to develop any evidence as
to value of the assets of the debtor."). In making this
argument, Defendant ignores that any failure by Plaintiff to
develop further evidence of solvency likely was in reliance upon
the lack of valuation and solvency evidence disclosed by
Defendant. In developing his case and determining the evidence
necessary to carry the burden of proof, Plaintiff is entitled to
rely upon Defendant's discovery responses and the obligations

14

imposed by the Rules of Civil Procedure. Therefore, the importance of the evidence weighs in favor of finding that Defendant's failure to disclose was not substantially justified or harmless.

Despite the importance of the evidence and the lack of any justification for his derogation of the rules, Defendant contends that he should not be sanctioned at trial because the Trustee is not now surprised by any new valuation evidence, and that any harm can be avoided because Defendant will agree to reopen discovery and permit the Trustee to obtain a valuation expert. Defendant's arguments are inconsistent and lack merit. In his response to the Motions in Limine, Defendant requests that the Court sanction the Trustee for uselessly spending estate assets in the prosecution of this case, see Defendant's Response, pp. 6-7, but in the same breath offers to ameliorate any damages to the estate by consenting to reopening discovery so that the estate may incur additional and substantial expenses by prolonging discovery and hiring experts. Of course, as this Court previously observed, the evidence of value identified by the Trustee, although not dispositive for purposes of summary judgment, is admissible at trial, and the Court is permitted to make inferences of solvency from that evidence. See Memorandum Order Denying Motion to Reconsider [Doc. #62], p. 7 n.5. Moreover, Defendant's indictment of the Trustee's failure to

further develop evidence of solvency rings hollow in the face of Defendant's failure to disclose any contrary evidence as required by the Federal Rules of Civil Procedure and simultaneous indictment that the Trustee has wasted valuable estate assets by expending more resources than this case warrants.

In any event, the Trustee was entitled to rely upon Defendant's discovery responses in weighing his burden of proof and developing evidence under the preponderance of the evidence standard. Attempting to restart this process a month from trial undoubtedly will disrupt the trial, and is unfair to the Trustee and the estate. The Trustee relied upon Defendant's failure to identify any valuation evidence in evaluating the merits of proceeding in this case, preparing witnesses and discovery, moving for summary judgment, and preparing for trial, among other strategic decisions over the last year and a half. Had Defendant timely responded to discovery in this case as required, the Trustee might have evaluated the merits of this case much differently prior to incurring the expenses of which Defendant now complains. In any event, reopening discovery at this point and requiring Plaintiff to incur further costs in investigating evidence Defendant should have disclosed during discovery would do nothing but "reward the party who failed to make proper disclosures by granting a continuance, a practice

16

which invites abuse." KBS Preowned Vehicles, LLC v. Reviva, Inc., No. 1:13 CV 138, 2014 WL 1479196, at *10 (N.D. W. Va. Apr. 14, 2014). For these reasons, the factors of surprise, ability to cure, and disruption similarly weigh in favor of finding that Defendant's failure to comply with the rules was not substantially justified or harmless, and the Court so finds.

**Sanctions**

Once it has determined that a violation was neither substantially justified nor harmless and that sanctions therefore are appropriate, a court must determine the nature and extent of the sanctions to be imposed. In Law Enforcement Alliance of America, Inc. v. USA Direct, Inc., the Fourth Circuit recognized a "four-part test for a district court to use when determining what sanctions to impose under Rule 37." 61 F. App'x 822, 830 (4th Cir. 2003) (quoting Anderson v. Found. For Advancement, Educ. & Employment of Am. Indians, 155 F.3d 500, 504 (4th Cir. 1998)). Courts may consider the following factors in fashioning appropriate sanctions: "(1) whether the non-complying party acted in bad faith, (2) the amount of prejudice that noncompliance caused the adversary, (3) the need for deterrence of the particular sort of non-compliance, and (4) whether less drastic sanctions would have been effective." Id. When considering these factors, the Fourth Circuit specifically rejected the necessity for a court to find bad faith before

17

imposing sanctions in addition to the presumptive sanction of exclusion of the evidence under Rule 37(c)(1), because "requir[ing] a finding of bad faith before discovery sanctions can be awarded . . . would be at odds with Rule 37(c)(1)'s plain language." Id. At 831. Therefore, once a court finds that the party's failure to provide information is not substantially justified or harmless, it is free to fashion appropriate relief along a continuum of severity as necessary to cure any prejudice and to deter similar conduct by other parties in the future.[7] This continuum of available sanctions ranges from striking pleadings and entering default against the offending party, see Fed. R. Civ. P. 37(c)(1)(C) and 37(b)(2)(A)(iii) and (iv), to any less drastic remedy which the Court deems appropriate.

Applying the four-part test provided by the Fourth Circuit, the Court concludes that it will exclude evidence of solvency or value offered by Defendant that is inconsistent with or supplemental to the information in Debtor's schedules. The Court has determined that Defendant's actions were not in good faith, the Trustee and the estate were prejudiced by the failure to disclose, and the Court should deter such a blatant disregard

---

[7] See also National Hockey League v. Metropolitan Hockey Club, Inc., 427 U.S. 639, 643 (1976) ("[S]anctions [under Rule 37] must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent.").

for the disclosure required by the rules of discovery. Defendant's lack of good faith in responding to the Trustee's Discovery Requests pertaining to solvency, Defendant's suggestion to participate in further expensive and untimely discovery now, in light of the amount of time that has elapsed thus far in the case, and the Court's interest in deterring similar conduct in the future all weigh in favor of imposing additional sanctions.

In considering the various sanctions available to it, the Court has considered both additional sanctions and whether less drastic sanctions would be effective. The Court has considered reopening the evidence and taxing Defendant with the costs of adducing that evidence. However, requiring Defendant to reimburse the estate for the cost of additional discovery might not fully compensate the estate for the damages incurred due to Defendant's non-disclosure. Furthermore, any evidentiary hearings necessary to quantify the cost of such additional discovery only will further delay and disrupt trial. Due to Defendant's actions in this case, it is impossible to determine the course this case would have taken if Defendant simply had complied with the rules. If he properly and timely had disclosed the evidence he now seeks to submit at the trial next month, the Trustee might have incurred the expenses of an expert witness in any event. More fundamentally, the Trustee may have

19

considered the evidence and decided not to pursue summary judgment, to prepare his evidence and strategy differently, or even may have considered whether to pursue this case any further. Regardless, the lack of evidence disclosed by Defendant undoubtedly was "baked into" the Trustee's preparation and strategy throughout the progression of the case.

Monetary sanctions also may be ineffective. According to Defendant's own filings, he has called into doubt whether he could satisfy any monetary sanction imposed by the Court. Permitting discovery to be reopened so that the cost of any additional discovery could be determined, allowing evidence of any other causative damages, and/or making the payment of such damages conditional on the imposition of alternative sanctions only will further delay trial in this case, and will impose further burdens on the bankruptcy estate. All of these consequences were easily avoidable by Defendant. Therefore, the Court finds that a lesser or alternative monetary sanction is inappropriate.

Despite finding that the factors, including the need for deterrence, weigh in favor of exclusion of the evidence and in favor of additional sanctions, the Trustee has not requested such additional sanctions and the Court will not impose them <u>sua sponte</u>. For these reasons, the Court will exclude any valuation evidence offered by Defendant in this case that supplements or

contradicts the information provided in the Debtor's bankruptcy schedules.

**Transfer Table is Established for Purposes of Trial**

Defendant has no objection to Plaintiff's request to limit Defendant's evidence at trial of any disputed loans and loan repayments only to such evidence consistent with Defendant's Exhibit 1, as supplemented by Defendant prior to summary judgment. Defendant's Response, p. 6 [Doc. #68]. The Court will therefore grant this request. Furthermore, the Court will grant Plaintiff's request to establish as facts for the purposes of trial all loans and loan repayments contained in the Transfer Table not labeled "disputed," as this request also came before the Court unopposed by Defendant.

**CONCLUSION**

For the reasons set forth herein, the Court will enter its Order: (1) excluding any evidence of the solvency of Debtor (including evidence of value) offered by Defendant at trial to the extent such evidence contradicts or supplements Debtor's schedules filed in this case; and (2) establishing as facts those transactions reflected in the Transfer Table to the extent recognized by the Court in its Summary Judgment Opinion.

[End of Document]

PARTIES TO BE SERVED

**James C. Lanik**
Chapter 7 Trustee
P.O. Box 1550
High Point, NC 27261


**Andrew D. Irby**
Roberson Haworth & Reese, PLLC
P.O. Box 1550
High Point, NC 27261


**James W. Smith, Jr.**
4601 Schoolway Drive
Greensboro, NC 27406


**Norman B. Smith**
Smith, James, Rowlett & Cohen, LLP
Suite 310
101 S. Edgeworth St.
Greensboro, NC 27401


**William P. Miller**
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401