**SO ORDERED.**

**SIGNED this 27th day of January, 2017.**



BENJAMIN A. KAHN
UNITED STATES BANKRUPTCY JUDGE

---

UNITED STATES BANKRUPTCY COURT
MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| Cox Motor Express of | ) | Case No. 14-10468 |
| Greensboro, Inc., | ) | |
| | ) | |
| Debtor. | ) | |
| | ) | |
| ―――――――――――――――― | ) | |
| | ) | |
| James C. Lanik | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary No. 15-02023 |
| | ) | |
| James W. Smith, Jr., | ) | |
| | ) | |
| Defendant. | ) | |
| ―――――――――――――――― | ) | |

**MEMORANDUM OPINION**

THIS ADVERSARY PROCEEDING came before the Court for trial on December 5, 2016. Also before the Court is the amended motion for sanctions [Doc. #'s 74 and 79] (as amended, the "Motion for Sanctions") filed by Plaintiff, on which the Court deferred ruling until trial. James C. Lanik appeared as chapter 7 trustee ("Trustee") for the debtor, Cox Motor Express of

1

Greensboro, Inc. ("Debtor").  Andrew D. Irby appeared as counsel for Plaintiff.  Norman B. Smith appeared as counsel for James W. Smith, Jr. ("Defendant").  For the reasons stated herein: (1) judgment will be entered in favor of Plaintiff and against Defendant for the avoidance of certain net preferential transfers in the amount of $97,600, and the recovery of the value of these transfers under 11 U.S.C. § 550; and (2) Plaintiff's Motion for Sanctions will be denied.

## I.   PROCEDURAL HISTORY[1]

Trustee commenced this adversary proceeding by filing a complaint [Doc. #1] (the "Complaint") against Defendant on May 22, 2015.  The Complaint alleges that the transfers from Debtor to Defendant during the period between April 30, 2013, and April 30, 2014, constitute preferential transfers pursuant to 11 U.S.C. § 547 and therefore Plaintiff is entitled to recover these transfers pursuant to 11 U.S.C. § 550(a).[2]  Defendant filed his Answer to Complaint [Doc. #16] (the "Answer") on July 27, 2015.

---

[1] The Court thoroughly set forth the procedural background in its prior rulings in this case.  See Memorandum Opinion on Summary Judgment [Doc. #43]; and Memorandum Opinion on Motions in Limine [Doc. #70].  Familiarity with those opinions is presumed and incorporated herein.

[2] The Complaint also sets forth two alternative claims for relief, asserting that the transfers were fraudulent transfers under 11 U.S.C. § 548, or under N.C. Gen. Stat. § 39-23.1 et seq.  Due to the finding that these transfers were preferential, and Trustee's failure to further brief or argue these claims, the Court will consider these claims for relief as abandoned.

On March 14, 2016, Plaintiff filed his Motion for Summary Judgment [Doc. #32]. In opposition to the Trustee's motion for summary judgment, Defendant filed the Affidavit of James W. Smith Jr. [Doc. #33] (the "Defendant's Affidavit"). In his affidavit, Defendant attempted to submit evidence that contradicted the schedules to which he had averred, and which would have been responsive to Trustee's outstanding discovery requests, but which previously had not been produced. Defendant further denied ever receiving a payment of $50,000 on March 12, 2014, or any part of it, and claimed therefore that Plaintiff's preference claim was overstated by that amount.

On August 9, 2016, the Court entered its Memorandum Opinion on Summary Judgment [Doc. #43] (the "Summary Judgment Opinion") and Order on Summary Judgment [Doc. #44]. The Summary Judgment Opinion granted partial summary judgment in favor of Plaintiff. Specifically the Court entered judgment (1) granting Trustee's Motion to Strike Defendant's Affidavit [Doc. #37];[3] (2) granting partial summary judgment under the elements of 11 U.S.C. §

---

[3] Plaintiff objected under Rule 37(c)(1) Fed. R. Civ. P. to the introduction of evidence contained in Defendant's Affidavit and Defendant's Brief which was not previously disclosed during discovery, despite Trustee issuing specific discovery requests to which such information would have been responsive. In response to the two interrogatories Trustee sent requesting all facts of which Defendant was aware in support of his contention that Debtor was not insolvent, Defendant stated only that "[t]he company in fact was not insolvent." The Court found that Defendant failed to respond in good faith to Plaintiff's discovery regarding solvency, failed to supplement his responses as required by Rule 26(e) Fed. R. Civ. P., and that this failure was not substantially justified or harmless as contemplated by Rule 37(c)(1). See Summary Judgment Opinion, pp. 19-26. The Court therefore struck Defendant's Affidavit. Id. at 26.

547(b)(1), (2), (4), and (5), with respect to all transfers reflected in the Transfer Table except the Marquette Transfer; (3) granting partial summary judgment on the issue of 11 U.S.C. § 547(c)(2), finding that Defendant cannot establish the ordinary course of business defense; and (4) denying summary judgment with regard to all remaining issues. The ruling in the Summary Judgment Opinion left four issues for trial: (1) whether Debtor was insolvent under 11 U.S.C. § 547(b)(3) at the time of the preferential transfers; (2) whether the transfer of $50,000 allegedly made to Defendant on March 12, 2014,[4] occurred, and, if so, whether it constituted a transfer of property of the debtor on account of an antecedent debt under 11 U.S.C. § 547(b) and (b)(2); (3) whether two alleged loans made from Defendant to Debtor on May 1, 2013, and December 18, 2013, occurred and constitute new value under 11 U.S.C. § 547(c)(4); and (4) the extent of any new value defense.

Prior to trial, Trustee filed two motions in limine [Doc. #64 and 65] (collectively, the "Motions in Limine") under Fed. R. Civ. P. 37, made applicable to this adversary proceeding by Fed. R. Bankr. P. 7037, requesting that the Court: (1) exclude any evidence offered by Defendant regarding the solvency or insolvency of Debtor to the extent that such evidence was not

---

[4] As discussed below, this transfer is now known to have occurred on March 7, 2014, and to have been made by Tamen Funding rather than Marquette Finance.

included in Defendant's responses to discovery; and (2) establish any non-disputed loans and repayments as facts for trial and exclude any evidence offered by Defendant regarding the disputed loans which had not been previously disclosed in discovery.    On November 4, 2016, the Court entered its Memorandum Opinion [Doc. #70] (the "Limine Opinion") and Order Granting Motion in Limine [Doc. #71] (the "Limine Order") granting the Motions in Limine.   In the Limine Order, the Court: (1) excluded for trial any evidence offered by Defendant of Debtor's solvency, including evidence of value, to the extent such evidence contradicts or supplements Debtor's schedules filed in this case; (2) established as facts for purposes of trial all loans and loan repayments reflected in Defendant's Exhibit 1 ("Transfer Table"), as supplemented by Defendant prior to summary judgment, not labeled "disputed;" and (3) excluded any expert testimony offered by Defendant at trial.

In the Motion for Sanctions, Trustee seeks additional sanctions pursuant to Fed. R. Civ. P. 37 and 11 U.S.C. § 105 against Defendant and his attorney, Norman B. Smith.   Trustee contends that Defendant and his counsel: (1) made misrepresentations to Trustee and the Court in regard to the disputed $50,000 payment from Marquette; (2) concealed certain real property owned in part by Defendant and previously undisclosed; and (3) defamed Trustee and his counsel in

Defendant's response to the Motions in Limine by criticizing Trustee and characterizing his actions as an attempt to "churn" the case to provide a higher fee for himself.  At the hearing on the Motion for Sanctions, the Court took the Motion for Sanctions under advisement, and deferred ruling on the motion until trial.

## II.  JURISDICTION AND AUTHORITY

The Court has jurisdiction over the subject matter of this proceeding pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 83.11 of the United States District Court for the Middle District of North Carolina.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(F).  The parties have consented to this Court entering final judgment as to all matters raised in the pleadings, see Joint Scheduling Memorandum, p. 3 [Doc. # 23], and this Court has constitutional authority to enter final judgments herein.

## III. FACTS

Debtor filed a voluntary petition under chapter 7 of the United States Bankruptcy Code on April 30, 2014 (the "Petition Date"), Bankr. Case No. 14-10468 (the "Main Case").  Plaintiff-Trustee initiated this adversary proceeding on May 22, 2015.  Plaintiff seeks to avoid a number of alleged preferential transfers made to Defendant within the one year prior to the Petition Date pursuant to 11 U.S.C. § 547, and to recover those

6

funds for the benefit of the estate pursuant to 11 U.S.C. § 550(a).

Debtor, Cox Motor Express of Greensboro, Inc., was a trucking company. James W. Smith Jr., Defendant, was the President of Debtor on the Petition Date and executed Debtor's bankruptcy petition and schedules under penalty of perjury in his capacity as President. For the past 15 years, Defendant has also been the general manager of Debtor and responsible for all of its day-to-day activities. Defendant is married to Pamela C. Smith, an officer and shareholder of Debtor. Defendant has been married to Pamela Smith at all relevant times to this adversary proceeding.

**A. Disputed Loans and Repayments**

One of the issues left for trial was the determination of whether certain loans and repayments had occurred. The disputed items were: (1) a purported loan of $8,000 from Defendant to Debtor on October 30, 2013; (2) a purported loan of $8,000 from Defendant to Debtor on December 18, 2013; and (3) a purported transfer of $50,000 from Debtor to Defendant on March 12, 2014. From Defendant's testimony, it is clear that the two $8,000 loans did not occur. The agreement between Defendant and Debtor was that for every $1,000 Defendant loaned, Debtor would owe interest of $200. Therefore, the loans in the amount of $40,000 that occurred on October 30 and December 18, 2013, resulted in

flat interest owed of $8,000 each. These interest charges were recorded separately on the ledger between the parties. Defendant's testimony corroborated this agreement. No additional funds were advanced by Defendant to Debtor beyond the $40,000 principal of each loan. The $8,000 entries merely reflected the flat amount of interest to which the parties agreed.

The parties also dispute the existence of a purported $50,000 transfer in March 2014 (the "Tamen Transfer"). Defendant's account statement from State Employee's Credit Union confirms that Defendant received a wire transfer in the amount of $50,000 from Tamen Funding, LLC ("Tamen") on March 7, 2014. See Tr. Ex. 47.[5] These funds were the proceeds from a loan transaction between Debtor and Tamen. The loan transaction is formalized in a loan agreement, promissory note, and security agreement between Debtor and Tamen. See Tr. Ex. 2. Despite Defendant's prior positions at summary judgment, and in contrast to arguments by his counsel that continued through trial, Defendant conceded in his testimony that the transfer of $50,000 into his personal account was from the loan proceeds that

---

[5] On August 9, 2016, the Court entered its Order on Final Pre-Trial Disclosures, Setting Procedure and Presentation of Exhibits at Trial for Pre-Trial Motions Including In Limine [Doc. #45] (the "Procedures Order"). The Procedures Order directed the parties to file all exhibits in a single, sequentially numbered and tabbed trial binder. The exhibits from the binder that were admitted at trial shall be referred to herein with their corresponding tab number as "Tr. Ex. ___."

otherwise were payable to Debtor.  Instead of paying these loan proceeds to Debtor, Tamen transferred the proceeds directly to Defendant, which he applied as repayment for prior advances to Debtor.

In response to Trustee's most recent motion for sanctions, Defendant and his counsel contended that "[o]n March 10, 2014, out of the same personal checking account of defendant, the sum of $30,000 was paid to Cox Motor Express, Inc., payroll account. This payment is indicated on defendant's bank account statement dated April 2, 2014, a copy of which is attached as Exhibit 1."[6] Defendant's Response to Plaintiff's Motion for Sanctions [Doc. # 80] ("Defendant's Response to Motion to Sanctions"), ¶ 1.b. Contrary to these representations, Defendant did not transfer any of the $50,000 received from Tamen to Debtor.  Although the account summary reflects that $30,000 was transferred out of the account on March 10, 2014, there is no evidence that these funds were transferred to or for the benefit of Debtor.  Therefore, the Court finds that Defendant did not make any such transfers to Debtor.

Defendant received the Tamen Transfer on March 7, 2014, as a repayment on the outstanding loan.  With the addition of this transfer, the final transfer table showing each loan and repayment is as follows:

---

[6] Exhibit 1 to the Response to Sanctions Motion is identical to Tr. Ex. 46.

| Date | Loan from Defendant to Debtor | Repayment from Debtor to Defendant |
|---|---|---|
| 05/01/2013 | $ 40,000.00 | |
| 10/30/2013 | $ 40,000.00 | $ 2,400.00 |
| 11/01/2013 | | $ 1,200.00 |
| 11/04/2013 | | $ 1,200.00 |
| 11/05/2013 | | $ 1,200.00 |
| 11/06/2013 | | $ 1,200.00 |
| 11/07/2013 | | $ 1,200.00 |
| 11/08/2013 | | $ 1,200.00 |
| 11/11/2013 | | $ 1,200.00 |
| 11/12/2013 | | $ 1,200.00 |
| 11/13/2013 | | $ 1,200.00 |
| 11/14/2013 | | $ 1,200.00 |
| 11/15/2013 | | $ 1,200.00 |
| 11/18/2013 | | $ 1,200.00 |
| 11/19/2013 | | $ 1,200.00 |
| 11/20/2013 | | $ 1,200.00 |
| 11/21/2013 | | $ 1,200.00 |
| 11/22/2013 | | $ 1,200.00 |
| 11/25/2013 | | $ 2,400.00 |
| 12/02/2013 | | $ 6,000.00 |
| 12/04/2013 | | $ 2,400.00 |
| 12/05/2013 | | $ 1,200.00 |
| 12/06/2013 | | $ 1,200.00 |
| 12/09/2013 | | $ 1,200.00 |
| 12/10/2013 | | $ 1,200.00 |
| 12/11/2013 | | $ 1,200.00 |
| 12/12/2013 | | $ 1,200.00 |
| 12/13/2013 | | $ 1,200.00 |

| | | |
|---|---|---|
| 12/16/2013 | | $ 1,200.00 |
| 12/17/2013 | | $ 1,200.00 |
| 12/18/2013 | $ 40,000.00 | |
| 12/19/2013 | | $ 4,800.00 |
| 01/01/2014 | | $ 1,200.00 |
| 01/02/2014 | | $ 1,200.00 |
| 01/03/2014 | | $ 1,200.00 |
| 01/04/2014 | | $ 1,200.00 |
| 01/06/2014 | | $ 1,200.00 |
| 01/07/2014 | | $ 1,200.00 |
| 01/08/2014 | | $ 1,200.00 |
| 01/09/2014 | | $ 1,200.00 |
| 01/10/2014 | | $ 1,200.00 |
| 01/13/2014 | | $ 1,200.00 |
| 01/14/2014 | | $ 1,200.00 |
| 01/15/2014 | | $ 1,200.00 |
| 01/16/2014 | | $ 1,200.00 |
| 01/17/2014 | | $ 1,200.00 |
| 01/20/2014 | | $ 1,200.00 |
| 01/21/2014 | | $ 1,200.00 |
| 01/22/2014 | | $ 1,200.00 |
| 01/23/2014 | | $ 1,200.00 |
| 01/24/2014 | | $ 1,200.00 |
| 01/27/2014 | | $ 1,200.00 |
| 01/28/2014 | | $ 1,200.00 |
| 01/29/2014 | | $ 1,200.00 |
| 01/30/2014 | | $ 1,200.00 |
| 02/11/2014 | | $ 2,400.00 |
| 03/07/2014 | | $ 50,000.00 |

| 03/13/2014 | $ 19,000.00 | |
|---|---|---|
| 03/18/2014 | $ 5,000.00 | |
| 03/24/2014 | $ 15,000.00 | |
| 03/26/2014 | | $ 15,000.00 |
| 03/28/2014 | | $ 12,000.00 |
| 04/04/2014 | | $ 4,800.00 |
| 04/08/2014 | | $ 16,800.00 |

**B. Insolvency**

The Court denied summary judgment with respect to Debtor's insolvency under 11 U.S.C. § 547(b)(3) because Debtor's schedules reflected that Debtor was balance sheet solvent on the petition date and Trustee had not established insolvency during the extended insider preference period for purposes of summary judgment. See Summary Judgment Opinion, pp. 29-32. Because of Defendant's failure to comply with the Federal Rules of Civil Procedure, the Limine Order prohibited Defendant from offering evidence at trial of Debtor's solvency to the extent such evidence contradicted or supplemented Debtor's schedules filed in this case. See Limine Order, p. 2. Trustee, however, was not similarly limited at trial because he had not violated the discovery rules. To establish Debtor's insolvency at trial, Trustee relies upon Debtor's tax returns, schedules, and the record of this case, including filed proofs of claim. Trustee contends that the solvency reflected on the schedules is

12

inaccurate because Debtor overvalued the American Way Property and rolling stock and failed to include the liability reflected in the Cox Claim.

### 1. The Real Property at American Way

Schedule A of Debtor's petition, Exhibit 1, p.1, lists certain real property located at 655 American Way, Lexington, NC (the "American Way Property"). The American Way Property is in two tracts totaling approximately 8.4 acres, and has a scheduled value of $383,250. Debtor obtained the property on March 30, 2011, for $60,000 at a public auction.[7]

Trustee listed the American Way Property for sale in July 2014 for $311,000. Trustee received no offers. The price was reduced in September, 2015, to $218,000, but Trustee still did not receive any offers over the next year. The Property ultimately was sold at public auction held August 10-17, 2016, for a price of just over $25,000.

### 2. The Rolling Stock

The parties dispute the nature of Debtor's ownership of certain trailers that Debtor leased from two separate companies. Trustee asserts that the trailers had little value to the estate because Debtor merely leased them. Defendant asserts that the

---

[7] The American Way Property was originally purchased at auction by Marquette Finance for the combined purchase price of $60,000. Marquette thereafter assigned their winning bid to Debtor in return for a payment from Debtor of $60,000 minus any credit for the proration of current year ad valorem taxes. See Tr. Ex. 17.

leases were in fact disguised secured transactions, subject to a
$1 purchase option at the end of the lease term.   Since a
determination of the value of these trailers is not necessary
for the reasons set forth below, it is unnecessary for the Court
to determine the value of this property or whether the leases
were true leases.

### 3. Liabilities Listed as "unknown" on Debtor's Schedules

Schedule F of Debtor's petition lists Dorothy Cox as
holding an unsecured, non-priority claim for rent owed in an
amount listed as "unknown."[8]   The schedules do not provide that
this   claim   is   contingent,   unliquidated,   or   disputed.
Nevertheless, because the claim is scheduled as "unknown," it
did not affect Debtor's total liabilities listed on the Summary
of Schedules.   Nathan Gregory Cox, as power of attorney, filed a
proof of claim on behalf of Dorothy Cox [Claim No. 26, included
as Tr. Ex. 24], asserting a claim in the amount of $1,526,640.31
plus interest.   The claim is comprised of amounts owed on a
promissory note in the amount of $463,240.07, rent owed by
Debtor in the amount of $737,800 (plus interest), a payment made
by Dorothy Cox on behalf of Debtor for a bank loan in the amount
of $320,544.48, and 2014 Guilford County property taxes paid by
Dorothy Cox on behalf of Debtor in the amount of $3,055.76.

---

[8] Schedule F also included an unliquidated claim by Prince William General
District Court for a fine in an unknown amount.   This amount appears to be de
minimis and does not affect the solvency analysis in this case.

14

Attached as Exhibit A to the proof of claim is a promissory note dated August 1, 2005, in the original principal amount of $320,960.37.   Attached as Exhibit B to the proof of claim are the minutes from a shareholder meeting of Debtor on March 30, 2001, in which it was agreed that Debtor would pay Dorothy Cox $5,000 per month in rent, with 8% interest on any amounts unpaid.   Also included are exhibits which allegedly show the amounts transferred from Dorothy Cox's account at New Bridge Bank used to pay amounts owed by Debtor to New Bridge.   Trustee has not objected to this proof of claim and testified that he did not intend to object to this proof of claim.   With the inclusion of this claim, Debtor's liabilities as of the Petition Date total $3,452,522.85, an amount which exceeds Debtor's assets by $1,363,508.10.

## IV.  ANALYSIS

In the Summary Judgment Opinion, with the exception of the disputed transfers, this Court held that Trustee had established every element of the preference action except for insolvency under 11 U.S.C. § 547(b)(3).   Since the Tamen Transfer remained in dispute for purposes of summary judgment, the Court first will consider the elements of a preference claim as to that transfer, and then the Court will consider whether Debtor was insolvent at the time of all the transfers for purposes of 11 U.S.C. § 547(b)(3).

**A. The Tamen Transfer**

Under 11 U.S.C. § 547(b), the trustee may avoid any transfer of an interest in property –

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made –

    (A) on or within 90 days before the date of the filing of the petition; or

    (B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and

(5) that enables such creditor to receive more than such creditor would receive if –

    (A) the case were a case under chapter 7 of this title;

    (B) the transfer had not been made; and

    (C) such creditor received payment of such debt to the extent provided by the provisions of this title.

11 U.S.C. § 547(b). Debtor was a corporation as defined under 11 U.S.C. § 101(9). Therefore, for purposes of section 547(b)(4)(b), an insider of the corporation includes any officer of Debtor, a person in control of Debtor, or a relative of a director, officer, or person in control of Debtor. See 11 U.S.C. § 101(31)(B). Defendant was both an officer of Debtor

16

and a relative of an officer of Debtor, and, therefore, Defendant is an insider of Debtor.[9]

The Tamen Transfer is different from the other preferential transfers in this case because Defendant received it from a third party rather than directly from Debtor. Nevertheless, it constitutes a "transfer of an interest in property of Debtor." The property of the debtor contemplated by section 547(b) is "property that would have been part of the estate had it not been transferred before the commencement of bankruptcy proceedings." Begier v. I.R.S., 496 U.S. 53, 54-58, 110 S.Ct. 2258, 110 L.Ed.2d 46 (1990); In re Cox & Schepp, 523 B.R. 511, 517 (Bankr. W.D.N.C. 2014). Courts broadly define "interest," and may look to the definition of property of the estate under section 541(a)(1), which includes "all legal or equitable interests of the debtor in property as of the commencement of the case," when determining whether the debtor has an interest in property. Begier, 496 U.S. at 58-59; In re Derrick, 190 B.R. 346, 355 (Bankr. W.D. Wis. 1995) (The definition of interest "is as broad as possible . . . . It includes any transfer of an interest in property, including a transfer of possession, custody, or control, as possession, custody and control are interests in property.").

---

[9] The time period section 547(b)(4)(A) shall be referred to herein as the "Preference Period." The period under section 547(b)(4)(B) shall be referred to herein as the "Insider Preference Period."

Upon signing the Business Loan Agreement [Tr. Ex. 2] and the accompanying promissory note and security agreement, Debtor obtained both a legal and equitable interest in the loan proceeds of $50,000. Pursuant to the Business Loan Agreement, Debtor was the borrower and it was the assets of Debtor that became encumbered pursuant to the security agreement. Tamen loaned these funds to Debtor solely for use in Debtor's business operations. See Business Loan Agreement, Tr. Ex. 2, p. 4 (Debtor covenants and agrees to "[u]se all Loan proceeds solely for the Borrower's business operations, unless specifically consented to the contrary by the Lender in writing."). Therefore, the transfer of these funds to Defendant, rather than Debtor, was a transfer of an interest in property of the debtor as contemplated by section 547(b).

Defendant is a creditor of Debtor. The Bankruptcy Code defines a "creditor" as an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor . . . ." 11 U.S.C. § 101(10)(A). A "claim" is defined as a "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . . ." 11 U.S.C. § 101(5)(A). Defendant does not dispute that he made loans to Debtor and testified at trial that each of the challenged

transfers were made by Debtor to him as repayment of his loans to Debtor. Defendant concedes that Debtor had an obligation to repay these loans to him, and that obligation therefore falls under the definition of a "claim." As the holder of that claim, Defendant is a creditor of Debtor. Defendant further concedes that each transfer, including the Tamen Transfer, was a repayment of previous loans, and therefore the transfers were made "for or on account of an antecedent debt" under section 547(b)(2). Because Defendant is an insider of Debtor, Plaintiff may avoid any preferential transfer made to Defendant during both the Preference Period and the Insider Preference Period. These periods encompass April 30, 2013, to the Petition Date. The Tamen Transfer occurred on March 7, 2014, which was within the Preference Period.

Finally, in order to show that an unsecured, non-priority creditor received more than he would have in a case under chapter 7, as contemplated by section 547(b)(5), Trustee must show that the distribution to this class of creditors would be less than 100%. In re Caremerica, Inc., 409 B.R. 737, 753-54 (Bankr. E.D.N.C. 2009). Defendant filed an unsecured, non-priority proof of claim against Debtor for the remaining unpaid balances of his loans. See Case No. 14-10468, Claim No. 14. Trustee testified at trial that there would not be a 100% payout to unsecured creditors, which Defendant does not dispute.

Therefore, the transfer allowed Defendant to receive more than he would have received in a hypothetical chapter 7 liquidation.

**B. Insolvency**

The sole remaining element is the insolvency of Debtor under section 547(b)(3) at the time of each of the transfers. 11 U.S.C. § 547(b)(3); see also In re Strickland, 230 B.R. 276, 283 (Bankr. E.D. Va. 1999) ("Evidence of insolvency on the date of the alleged preference is the critical issue and proof of insolvency on any other date is insufficient."). It is the burden of Trustee to show by a preponderance of the evidence that Debtor was insolvent on the date of each transfer. See 11 U.S.C. § 547(g); In re Roblin Indus., Inc., 78 F.3d 30, 34 (2d Cir. 1996). Based on the testimony and exhibits provided, the Court finds that Trustee has met this burden and shown by a preponderance of the evidence that Debtor was insolvent during the period of the transfers.

The Bankruptcy Code defines insolvency as a "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32)(A). Courts in the Fourth Circuit use the "balance sheet" test for determining insolvency. See In re Heilig-Meyers Co., 328 B.R. 471, 477 (E.D. Va. 2005). Under the "balance sheet" test, the debtor is insolvent when the sum of all the debtor's liabilities is greater than the sum of all its

assets,[10] at a fair valuation, at the time of the transfer.  See In re Roszkowski, 494 B.R. 671, 677 (Bankr. E.D.N.C. 2013); In re Johnson, 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006); In re Bruno Mach. Corp., 435 B.R. 819, 838 (Bankr. N.D.N.Y. 2010).

In determining balance sheet insolvency, the Court first must consider whether "fair valuation" contemplates the fair market value of the assets after proper marketing, or liquidation value.  "The conclusion that a debtor is a going concern or on its deathbed dictates whether to value the debtor's assets based on their liquidation value or the value they would fetch if sold over a reasonable period of time; the assumption being that a going concern could wait for a better offer and presumably a higher price."  In re Heilig-Meyers Co., 328 B.R. at 477.  "'Fair value, in the context of a going concern, is determined by the fair market price of the debtor's assets that could be obtained if sold in a prudent manner within a reasonable period of time to pay the debtor's debts.'"  Id. at 477-78 (quoting In re Roblin Indus., Inc., 78 F.3d 30, 36 (2d Cir. 1996)).

In Heilig-Meyers, the court considered the debtor's operations on the petition date.  Id. ("A debtor lies on its

---

[10] This calculation of the debtor's assets does not include "the value of any property fraudulently conveyed by the debtor" or "the fair market value of any property that may be exempted from the property of the estate."  In re Johnson, 336 B.R. 712, 716 (Bankr. M.D.N.C. 2006).

deathbed where the debtor is 'in a precarious financial condition' so that 'liquidation was imminent when the petition was filed.'" (quoting In re Miller & Rhoads, 146 B.R. 950, 955-56 (Bankr. E.D. Va. 1992))).  "[A] business does not have to be thriving in order to receive a going concern valuation. Before the going concern valuation is to be abandoned, a business must be wholly inoperative, defunct, or dead on its feet." In re Am. Classic Voyages Co., 367 B.R. 500, 508 (Bankr. D. Del. 2007), (quotation marks and citations omitted), aff'd, 384 B.R. 62 (D. Del. 2008).  Trustee failed to provide evidence establishing that Debtor was "wholly inoperative, defunct, or dead on its feet."  Id.  The Court therefore finds that Debtor's assets should properly be valued as a going concern rather than at liquidation.

The Court also must consider Debtor's solvency at the time of each transfer.  Rather than requiring a separate, impractical solvency analysis for the date of each transfer, courts use retrojection.  Retrojection permits a court to rely upon continuing insolvency during the applicable preference period, rather than having to make duplicative findings of insolvency at the time of each individual avoidable transfer.  The method is summarized in In re Strickland as follows: "if a debtor was insolvent on the first known date and insolvent on the last relevant date, and the trustee demonstrates the absence of any

substantial or radical changes in the assets or liabilities of the debtor between the two retrojection dates, then the debtor is deemed to be insolvent at all intermediate times." 230 B.R. 276, 284 (Bankr. E.D. Va. 1999) (citing In re Terrific Seafoods, Inc., 197 B.R. 724, 731 (Bankr. D. Mass. 1996); In re Thomas, 7 B.R. 389, 393 (Bankr. W.D. Va. 1980)). In order to successfully rely upon retrojection, Trustee must prove that: (1) Debtor was insolvent before or on the date of the first preferential transfer; (2) Debtor was insolvent on or after the date of the last preferential transfer; and (3) there was no significant change in the assets or liabilities of Debtor between these two dates.

At least one court in the Fourth Circuit recently has applied the retrojection rule, and relied on the debtor's schedules to determine that the debtor was insolvent for purposes of 11 U.S.C. § 548. In In re Ryan, 472 B.R. 714 (Bankr. E.D. Va. 2012), the court determined that the debtor's schedules established balance sheet insolvency as of the petition date. The uncontested schedules showed assets of $752,945 and liabilities of $1,335,348. The court then considered whether the trustee had established that the debtor was insolvent prior to the first allegedly fraudulent transfer. The court found that the trustee also established insolvency prior to the first transfer because, prior to that transfer, a

one million dollar state court judgment had been entered against the debtor which rendered Debtor insolvent. Ryan, 472 B.R. at 728. The court further found that there was no significant change in the debtor's assets or liabilities between these dates. Id. Based on this showing of insolvency before and after the alleged fraudulent transfers, without any intervening substantial change in the debtor's assets or liabilities, the court found that the debtor was insolvent at the time of each of the challenged transfers. Id.

In this case, Trustee relies on Debtor's schedules, as supplemented by the evidence at trial, to establish insolvency on the petition date. Trustee relies upon Debtor's tax returns to establish insolvency prior to the first allegedly preferential transfer, and to demonstrate that no significant change occurred during the interim.

### 1. Schedules

Bankruptcy courts have broad discretion in considering evidence to support a finding of insolvency and a trustee "can use any appropriate means to prove insolvency on the date of the alleged preferential transfer." Strickland, 230 B.R. at 282. Although the schedules prepared by a debtor are not generally the most favored evidence for establishing solvency or insolvency, see In re Hoffinger Indus., Inc., 313 B.R. 812, 819 (Bankr. E.D. Ark. 2004) ("[V]alues assigned to assets by a

24

debtor are not necessarily determinative of their fair value."), as indicated by the opinions in Ryan and Strickland, courts rely on schedules in appropriate circumstances. See e.g., In re Perry, 158 B.R. 694 (Bankr. N.D. Oh. 1993); and In re Miller, 428 B.R. 437, 447 (Bankr. N.D. Ohio 2010) ("[W]hile the financial figures disclosed by a debtor are not dispositive, they are probative . . . .").[11]

Debtor's schedules reflect total assets of $2,089,014.75 and total liabilities of $1,925,882.54. Therefore, based solely on the schedules, Debtor's assets exceed liabilities in the amount of $163,132.21. The evidence, however, demonstrated that the liabilities reflected in the schedules were understated due to the "unknown" amount of the claim listed for Dorothy Cox in Schedule F of Debtor's petition. As stated above, Dorothy Cox asserts a claim in the amount of $1,526,640.31 plus interest.

---

[11] The court in Strickland noted a split between bankruptcy courts with respect to whether a court may rely on the debtor's schedules to establish insolvency. 230 B.R. at 283. In its case, the trustee did not present any evidence on the debtor's solvency during the evidentiary portion of the trial. Id. at 282. Instead, the trustee asked the court to take judicial notice of the schedules only after the defendant argued after the close of evidence that the trustee had not produced any evidence of insolvency. Id. The court noted that schedules only show the debtor's financial condition on the petition date, while the burden of the trustee is to show the insolvency of the debtor at the exact moment the transfer occurred. Id. Therefore, even assuming that the schedules established insolvency on the petition date, it was unnecessary for the court to resolve the split because the trustee failed to produce evidence that the debtor was insolvent on the date of each individual transfer. Id. In this case, Defendant was the president of Debtor, signed Debtor's schedules under penalty of perjury, relied solely upon these schedules to rebut the presumption of insolvency under 11 U.S.C. § 547(f) at summary judgment, and was sanctioned for failing to respond to discovery requests regarding any facts related to the debtor's solvency. Under these circumstances, the Court will exercise its discretion to consider the schedules, among other evidence, in determining insolvency as of the petition date.

Included with this claim is a promissory note signed by Debtor as well as the minutes from a shareholder meeting acknowledging the terms and debt owed for rent.   This claim has never been contested, and Trustee testified that he had no intention of objecting to this claim.   The proper filing of a proof of claim is "prima facie evidence of the validity and amount of the claim."  Fed. R. Bankr. P. 3001(f).   Therefore the Court finds that the liabilities on Debtor's schedules should properly include the full amount of the claim filed by Dorothy Cox in the amount of $1,526,640.31.   See In re Melon Produce, Inc., 122 B.R. 641, 644 (D. Mass. 1991) ("[T]he Court considers the twenty-five uncontested Proofs of Claims as sufficient evidence of existing liabilities to establish insolvency."), aff'd, 976 F.2d 71 (1st Cir. 1992).

     With the inclusion of this claim, Debtor's liabilities as of the petition date total $3,452,522.85, which exceeds Debtor's assets in the amount of $1,363,508.10.   The Court therefore finds that Debtor was insolvent as of the April 30, 2014 petition date.[12]

### 2. Tax Returns

     The Court noted in its Summary Judgment Opinion that tax returns also are not traditionally the best evidence for showing

---

[12] Due to this large showing of insolvency it is unnecessary for the Court to determine whether the rolling stock and the American Way Property are overvalued in the schedules as argued by Trustee.

insolvency.   A corporation's tax returns provide only a "book value" for assets and "book values are not ordinarily an accurate reflection of the market value of an asset." <u>In re Roblin Indus., Inc.</u>, 78 F.3d 30, 36 (2d Cir. 1996) (citing <u>In re McLean Indus., Inc.</u>, 132 B.R. 247, 258 (Bankr. S.D.N.Y. 1991); <u>In re F & S Central Mfg. Corp.</u>, 53 B.R. 842, 849 (Bankr. E.D.N.Y. 1985)).   Nevertheless, tax returns, especially those showing significant negative retained earnings, can be used as proof of insolvency.   See <u>In re Buffalo Auto Glass</u>, 187 B.R. 451, 453 (Bankr. W.D.N.Y. 1995) ("Trustee has provided a copy of Debtor's corporate tax return for the time period in question, which shows negative retained earnings. There being no evidence offered by Defendant under Fed.R.Civ.P. 56(e) as to why that does not establish the corporation's insolvency at that time, the Court finds that the tax return establishes Debtor's insolvency at the time of the transfers by a preponderance of the evidence."); see also <u>Strickland</u>, 230 B.R. at 283–84 (in determining insolvency, "proper analysis should focus on more accurate evidence, including current appraisals, opinion valuation, actual sales of the assets, and <u>tax returns</u>." (emphasis added)).   Therefore, although tax returns are not the strongest evidence of the value of a debtor's assets and liabilities, they are competent evidence from which the Court can make a determination and draw inferences as to Debtor's

financial condition and solvency.  See In re Flashcom, Inc., 503 B.R. 99, 123 (C.D. Cal. 2013) ("Regardless, while '[b]ook value does not necessarily prove fair market value, [it] is competent evidence.'" (quoting Mizell v. Phillips, 240 F.2d 738, 741 n. 2 (5th Cir. 1957); and citing 2 Collier on Bankruptcy, § 101.32[4] (Matthew Bender & Co., Inc. 2013))), aff'd, 647 F. App'x 689 (9th Cir. 2016); see also Memorandum Order Denying Motion to Reconsider [Doc. #62], p. 7 n.5.

Trustee has provided copies of Debtor's tax returns for the tax years of November 1, 2011, through October 31, 2012 [Tr. Ex. 32], and November 1, 2012, through October 31, 2013 [Tr. Ex. 33].  While each of these tax returns is indicative of insolvency, the Court will focus on the 2012-2013 tax return because it temporally coincides with the initial preferential transfer challenged by Trustee.  The balance sheet included in the 2012-2013 tax return reflects that Debtor had assets totaling $1,443,354 as of October 31, 2013.  Tr. Ex. 33, p. 5. Debtor's liabilities at this time totaled $1,537,841.  Based on these figures, liabilities exceeded assets in the amount of $94,487.  The balance sheet also shows negative retained earnings in the amount of $493,645.  For the year, Debtor had a total loss in the amount of $945,939.  These facts tend to show that Debtor was in serious financial difficulty and insolvent on the date of the first transfer.  Due to his sanctionable

conduct, as set forth in the Limine Opinion and Order, Defendant was prohibited from offering any evidence to rebut the showing on the tax returns.   See Limine Order, p. 2.   The Court therefore finds that Trustee has established Debtor's insolvency as of October 30, 2013 by a preponderance of the evidence.

### 3. Retrojection

Plaintiff has established by a preponderance of the evidence that Debtor was insolvent on both the starting and ending dates relevant to retrojection in this case.   The Trustee testified and the evidence shows that there was no major change in the assets or liabilities of Debtor during this time which would contradict Debtor's continuing insolvency.   Therefore, Plaintiff has met his burden and proved that Debtor was insolvent on the date of each preferential transfer, as required by 11 U.S.C. § 547(b)(3).   With this finding, Plaintiff has met each element of 11 U.S.C. § 547(b) and the Court finds that the transfers from Debtor to Defendant from October 30, 2013, to April 30, 2014, constitute avoidable preferential transfers, subject to the affirmative defense of new value.

### C. New Value Defense

Trustee has conceded that any loans made by Defendant during the Preference Period constitute "new value" pursuant to 11 U.S.C. § 547(c)(4).   Therefore, the Court must determine the extent of the new value defense.   When determining the extent of

a new value defense, the Fourth Circuit has instructed that the court "calculate[] the difference between the total preferences and total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior) preferences." In re Meredith Manor, Inc., 902 F.2d 257, 259 (4th Cir. 1990). The "creditor is allowed to apply the giving of 'new value' against the immediately preceding preference as well as against all prior preferences." Id. Nevertheless, these "new value" amounts may not be used to offset any preferential payments made after the new value is advanced. Id.; see also In re Harrelson Utilities, Inc., Bankr. Case No. 09-02815-8-RDD, A.P. No. 09-00094-8-RDD, 2010 WL 2465341, at *2 (Bankr. E.D.N.C. June 11, 2010) (applying the net result rule from Meredith Manor, and observing that, "to determine the amount of new value advanced under this rule, a court should consider the 90-day preference period and calculate the difference between the total preference and the total advances, provided that each advance is used to offset only prior (although not necessarily immediately prior preferences)." (emphasis added)). For example, if a debtor makes a preferential transfer to a creditor of $30,000, and the creditor then makes a "new value" advance to the debtor of $40,000, there would be no net avoidable preference at that point since the $40,000 advance negates the previous $30,000 preference with

$10,000 left over. But, if the debtor then makes another preferential transfer to the creditor of $20,000, the creditor is not permitted to apply the $10,000 left over from the prior "new value" to this future preferential transfer. Therefore, this hypothetical would result in a net avoidable preference of $20,000. This method of calculation provided in Meredith Manor also establishes that any loans made by a creditor during the preference period, but prior to any preferential transfers being made by the debtor, likewise may not be used as "new value" to offset future preferential transfers.

Using the established Transfer Table, supra, and the methods dictated by the Fourth Circuit in Meredith Manor, the net avoidable preference in this case is $97,600. This amount is determined as follows: the first two items in the table are loans from Defendant to Debtor. As described above, these loans occurred prior to any of the preferential transfers, and therefore may not be used to offset later preferential transfers. Between October 30, 2013, and December 17, 2013, Debtor made a series of preferential transfers totaling $43,200.[13] Defendant made a loan to Debtor on December 18, 2013,

---

[13] On October 30, 2013, there was both a loan of $40,000 and a repayment of $2,400. If the $2,400 repayment occurred prior to the loan, then the $40,000 loan amount could be used as new value to offset the repayment. Under 11 U.S.C. § 547(g), Defendant has the burden of proving the existence of the new value affirmative defense under 11 U.S.C. § 547(c)(4). Defendant failed to present any evidence demonstrating that the October 30, 2013 loan was made after receipt of the payment on the same date. Therefore, the Court finds that Defendant did not establish the new value defense for this payment by a

31

in the amount of $40,000 which therefore reduced the net avoidable preference to $3,200. Between December 19, 2013, and March 7, 2014, Debtor made a series of preferential transfers totaling $84,800. When added to the existing net preference of $3,200, this resulted in a net avoidable preference of $88,000 as of that date. Defendant then made three loans to Debtor totaling $39,000, which reduced the net avoidable preference to $49,000. Finally, Debtor made four preferential transfers to Defendant totaling $48,600, which results in the final avoidable preference amount of $97,600.

### D. Motion for Sanctions

Plaintiff cited Fed. R. Civ. P. 11, Fed. R. Civ. Pro. 37, and 11 U.S.C. § 105 as bases for the Court to award further sanctions against Defendant. See Motion for Sanctions. Rule 11 of the Federal Rules of Civil Procedure does not apply to this adversary proceeding. Moreover, its corollary in bankruptcy, Fed. R. Bankr. P. 9011(c)(1)(A), requires a movant to serve any motion seeking sanctions 21 days prior to filing the motion with the Court. Prior to the initial hearing on the motion, Plaintiff withdrew all reference to Fed. R. Civ. P. 11, relying solely upon Fed. R. Civ. P. 37 and section 105. Despite Trustee's withdrawal of any request under Rule 11, the Court may

---

preponderance of the evidence, and the October 30, 2013, $40,000 loan may not be used as new value to offset the $2,400 preferential payment of the same date.

consider imposing sanctions under Fed. R. Bankr. P. 9011 on its own initiative in appropriate circumstances. <u>See</u> Fed. R. Bankr. P. 9011(c)(1)(B).

### 1. Fed. R. Civ. P. 37

Defendant has failed to adequately respond to discovery in this case, and has made representations to the Court that are inconsistent with the evidence and his testimony at trial as set forth above. The Court previously sanctioned Defendant for his conduct in discovery in this case. <u>See</u> Summary Judgment Opinion at 19-26; Limine Opinion at 9-21; and Section I, pp. 3-5, <u>supra.</u>

The evidence at trial revealed additional discovery failures and inconsistent statements. Furthermore, counsel did not make a reasonable inquiry into representations in filings with the Court. In Defendant's summary judgment affidavit, Defendant stated that he "never received the $50,000 or any part of it." Defendant's Affidavit, p. 4. It was due to this affirmation that the Tamen Transfer remained an issue for trial. Even after summary judgment, Defendant continued to deny receipt of these funds. In November 2016, just weeks before the trial, Trustee received from a non-party to this action a copy of an email written by Defendant which was dated the day before the Tamen Transfer. In the email, Defendant instructed Jim Otteman at Tamen to wire the $50,000 to his personal bank account, and provided his personal bank account number for the wiring

33

instructions.  <u>See</u> Motion for Sanctions [Doc. #74], Exhibit A. Defendant conceded that he had received the funds into his personal account only after Trustee provided a copy of this email to counsel for Defendant.  In his Response to Motion for Sanctions, Defendant attempted to explain his previous inconsistent averment by stating that Defendant had believed that the funds never went through his personal bank account, but even if they did, the funds were used for Debtor's benefit and "no part of this money ever went to defendant's personal use or benefit."  <u>See</u> Response to Motion for Sanctions, ¶¶ 1.a. and 1.b.  This second attempt to explain the inconsistencies is itself inconsistent with the evidence and Defendant's testimony at trial.  At trial, Defendant readily conceded that the $50,000 was transferred to him for his personal benefit as repayment of his outstanding loans to Debtor.  Defendant's counsel further attempted to excuse these inconsistencies by arguing that they could not have known that Defendant personally received the funds because Trustee did not provide Defendant with his own bank account number in which to look for the transfer until immediately prior to trial.

The argument that Defendant did not review his records from this bank account because Trustee did not provide him with his own bank account number until immediately before trial lacks merit.  It is not Trustee's responsibility to provide a list of

Defendant's bank accounts before Defendant makes an affirmative representation to the Court in a filing signed by counsel that he did not personally receive funds.  This was Defendant's personal bank account that he regularly used, including transferring large sums of money from it to Debtor.  See Response to Motion for Sanctions, Exhibit 1.  It is not credible that the Defendant did not know of this account and could not have timely provided this information to Trustee as required by Trustee's outstanding discovery requests.  Furthermore, the Defendant's averment that the Tamen Transfer never went to Defendant's personal use or benefit is factually without merit, as readily conceded by Defendant at trial.  Defendant testified that he received the $50,000 as a repayment for his loan and that he was not required to further transfer these funds to Debtor as previously argued by his attorney.[14]  In Defendant's

---

[14] Defendant's counsel elicited testimony from Defendant at trial as follows:

> **Defendant**: On that sheet right there it shows that uh $50,000 Marquette gave Jim to pay back for the loan.
>
> **Attorney**: It says "to pay."
>
> **Defendant**: To pay . . . to pay me.
>
> **Attorney**: What was meant there when it said "to pay?"
>
> **Defendant**: To pay me back for the loan.
>
> **Attorney**: Were you supposed to further make payment of it when you got a hold of it?
>
> **Defendant**: No sir.
>
> **Attorney**: So you were just supposed to keep the 50?

Response to Motion for Sanctions, he and his counsel further certified to the Court that, not only were the funds not transferred to him for his personal benefit, but also $30,000 of the Tamen Transfer immediately was transferred out of the account to Debtor's payroll account on March 10, 2014. Defendant's Response to Motion for Sanctions ¶¶ 1.a. and 1.b. Despite this unequivocal representation in the filing with the Court, there is no indication on the account statement showing where this money went; it simply says it was a "Withdrawal or Check." Tr. Ex. 47. Defendant did not provide any evidence where these funds went. In fact, at trial, Defendant's explanation again changed. Counsel conceded that they did not find any evidence that the funds went to Debtor's payroll, but Defendant now believed that it went to pay an insurance bill for Debtor. Trial Recording [Doc. #82], at 2:54:53. The Court sustained Plaintiff's objection to this third attempt to provide unsubstantiated testimony of purported additional transfers that were not previously disclosed in discovery. Id. at 2:56:30-2:57:55.

The Court finds that Defendant's conduct is sanctionable under Rule 37. As the Court has noted in its Summary Judgment Opinion and Limine Opinion, Rule 37 permits the imposition of

---

**Defendant**: Yes sir.

Trial Recording [Doc. #82], at 02:53:40.

sanctions when the nondisclosure of evidence was not "substantially justified" or "harmless." The Fourth Circuit uses a five factor test to determine whether a nondisclosure of evidence is substantially justified or harmless:

> (1) the surprise to the party against whom the evidence would be offered; (2) the ability of that party to cure the surprise; (3) the extent to which allowing the evidence would disrupt the trial; (4) the importance of the evidence; and (5) the nondisclosing party's explanation for its failure to disclose the evidence.

Southern States Rack And Fixture, Inc. v. Sherwin-Williams Co., 318 F.3d 592, 597 (4th Cir. 2003). In addition to or instead of barring the introduction of the noncompliant evidence at trial, the Court may also order payment of the reasonable expenses, including attorney's fees, caused by the failure. See Fed. R. Civ. P. 37(c)(1)(A).

Defendant failed to disclose two pieces of evidence that have been brought to the attention of the Court: (1) the documents relating the American Way Property which Defendant attempted to introduce at trial; and (2) the information relating to the Tamen Transfer consisting of Defendant's bank account, Tr. Ex. 47, the Business Loan Agreement, Tr. Ex. 2, and the emails relating to the transfer, Tr. Ex. 3 and 5. In regard to the American Way Property document, the Court finds that the nondisclosure of this evidence was harmless. The Court sustained Trustee's objection to the introduction of this

37

document at trial so it was not prejudicial to the outcome of the proceeding. While this conduct ultimately was harmless, it nevertheless is a further demonstration of the bad faith shown by Defendant and his counsel.

Defendant's failure to disclose information relating to the Tamen Transfer was neither substantially justified nor harmless. Since Trustee was the party seeking to introduce this evidence and introduced this evidence at trial, the first three factors of the Southern States Rack test are inapplicable. The two remaining factors are the importance of the evidence and the non-disclosing party's explanation. This evidence was undoubtedly important to this proceeding. The documentation relates to a $50,000 transfer from Debtor to Defendant, which is more than half of Defendant's ultimate liability. Any of these documents would have been responsive to a number of Trustee's interrogatories and document production requests. The nondisclosure of this evidence resulted in Trustee having to find this information elsewhere. Defendant's explanation for the non-disclosure also was unconvincing and not credible. As the Court noted above, Defendant's reason for not disclosing the bank account or documents related to the transfer was that Trustee had not provided him the information about his own bank account, an explanation which lacks any merit. Defendant was a guarantor on the Business Loan Agreement, see Tr. Ex. 2, and

38

should have provided this agreement to Trustee during discovery. Defendant also was a party to the emails sent in arranging this loan and specifically gave Tamen the routing information to the bank account at issue. See Tr. Ex. 5. Therefore, the Court finds that Defendant's conduct is sanctionable under Fed. R. Civ. P. 37(c)(1)(A).

While the actions by Defendant are sanctionable, the Court will not impose sanctions in this case because Trustee failed to offer any evidence of the damages directly caused by Defendant's conduct. At the hearing on the Motion for Sanctions, the Court informed Trustee that it would consider the Motion for Sanctions at trial and Trustee could present evidence of damages at that time. Trustee failed to present any evidence on the damages caused by the nondisclosure of the Tamen Transfer. Without information on the extent of damages, the Court is unable to determine what "reasonable expenses" pursuant to Rule 37(c)(1)(A) would be and must deny the motion.[15]

### 2. Fed. R. Bankr. P. 9011

The Court has considered imposing sanctions against Defendant and his counsel sua sponte due to his representations

---

[15] The Motion for Sanctions also moves for sanctions based on the concealment of certain real property owned in part by Defendant and previously undisclosed to Trustee as well as the statements in Defendant's response to the Motions in Limine which criticize Trustee and characterize his actions as an attempt to "churn" the case to provide a higher fee for himself. The Court finds that these actions do not rise to the level of sanctions under Fed. R. Civ. P. 37, 11 U.S.C. § 105, or its inherent power.

to this Court in violation of Fed. R. Bankr. P. 9011. Rule 9011(b) provides:

> REPRESENTATIONS TO THE COURT. By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney . . . is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,—
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
>
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on lack of information and belief.

Fed. R. Bankr. P. 9011(b).

By signing and filing Defendant's Response to the Motion for Sanctions with the Court, Defendant's counsel certified to the Court that the Tamen Transfer was not made to Defendant for his personal benefit and that $30,000 was immediately transferred to Debtor's payroll account. Neither of these certifications was supported by competent evidence, and the

certifications were not specifically identified as being subject to further discovery.   Even if these representations had been specifically identified and qualified as subject to further discovery, the evidence at trial demonstrates that no reasonable inquiry was made into these representations prior to filing them with the Court.   This conduct violates Rule 9011.   Defendant and his counsel also violated Rule 9011 by signing and filing, respectively, Defendant's Affidavit at summary judgment averring that Defendant did not receive the Tamen Transfer.

Defendant and his counsel have shown a pattern in this case of failing to provide the information they are required to provide and then, upon being challenged for their failures, producing additional explanations or documents that should have been produced in discovery.   The Court previously sanctioned Defendant for this conduct in its Limine Order.   Despite the prior sanctions, Defendant's belated production of information was not solely limited to the Tamen Transfer and purported new value for which Defendant has no documentary evidence.   At trial, Trustee introduced evidence of the value of the American Way Property to demonstrate that its value was overstated in the schedules.   After a recess in the trial, Defendant's counsel attempted to introduce previously undisclosed documentary evidence of the value of this property which he stated Defendant found during the lunch break.   The documents purportedly found

41

over the lunch break would have been directly responsive to outstanding discovery requests by Trustee. See Tr. Ex. 43, p. 13 (Plaintiff's Interrogatory #15: "Please identify any and all evidence, including documentation, in your possession regarding or in any way relating to the fair market value of that certain parcel of real property owned by debtor, said property consisting of approximately 8.4 acres having an address of 655 American Way, Lexington, NC."). The Court excluded this evidence for a number of reasons, but it is a further example of Defendant's disregard for the rules and this Court.

Despite these failures, the Court has carefully considered the record in this case, and, in exercising its discretion, the Court will not sua sponte impose sanctions pursuant to Fed. R. Bankr. P. 9011 against Defendant or Defendant's counsel. The Court will not tolerate any further violations of Defendant's or his counsel's violations of the rules of disclosure and candor to the tribunal.

## V.   CONCLUSION

For the reasons set forth herein, the Court will enter judgment in favor of Trustee and against Defendant, James W. Smith, Jr., avoiding the transfers pursuant to 11 U.S.C. § 547(b); awarding a monetary judgment in the amount of $97,600 under 11 U.S.C. § 550 for the benefit of the estate; and denying Trustee's Motion for Sanctions.

42

[End of Document]

**<u>PARTIES TO BE SERVED</u>**

James C. Lanik
Chapter 7 Trustee
P.O. Box 1550
High Point, NC 27261


James W. Smith, Jr.
4601 Schoolway Drive
Greensboro, NC 27406


Norman B. Smith
Smith, James, Rowlett & Cohen, LLP
Suite 310
101 S. Edgeworth St.
Greensboro, NC 27401


William P. Miller
Bankruptcy Administrator
101 South Edgeworth Street
Greensboro, NC 27401